Parker, C. J.
The prisoner, having been convicted, by the verdict of a jury, of the crime of murder, at the last term of the Court, moved for a new trial; because, as alleged in his motion, one Sylvester Stoddard, who had been sworn as a witness on the part of government, and who had testified to the jury, had been convicted of the crime of larceny, in a court having jurisdiction of the offence, within the state of New York; whereby, as is alleged, he was rendered infamous, and for that reason his testimony could not be received in a court of justice in this commonwealth. A copy of the record of that conviction has been produced in support of the motion; °and sufficient evidence has been given, to satisfy the Court, for the purpose of sustaining this motion, that the Sylvester Stoddard who was sworn and examined on the trial of the prisoner, was the subject of that conviction. It appeared also, that judgment was rendered upon that conviction, and was executed upon the convict, within the public prison of the state of New York.
It has been argued by the attorney and solicitor-general, that by law a new trial cannot be granted of a capital felony; and it appears by the English text-books, and by several decisions cited in support of the position, that in cases of felony, a new trial is not usually allowed by the courts of that country. But whatever reasons may exist in that country for this practice, we are unable to discern any sufficient ground for adopting it here.
* That a prisoner, who has been tried for a felony, and [ * 534 ] acquitted, should not be subjected to a second trial for the same offence, seems consistent with the humane principles of the common law, in relation to those, whose lives have been once *432 put in jeopardy. But the same humane principles would appear to require, that after a conviction, a prisoner should be indulged with another opportunity to save his life, if any thing had occurred upon the trial, which rendered doubtful the justice or legality of his conviction. Nemo bis debet vexari, pro una et eádem causa, is a maxim of justice, as well as of humanity; and was established for the protection of the subject, against the oppressions of government. But it does not seem a legitimate consequence of this maxim, that one who has been illegally convicted, should be prevented from having a second inquiry into his offence; that he may be acquitted, if the law and the evidence will justify an acquittal.
It is true, that, in England, the utmost caution is used on capital trials in favor of life ; and if an irregularity materially affecting the trial, occurs to the injury of the accused, the court usually represents such matter to the crown; and a pardon is generally granted. But it is the right of every subject of that country, and of every citizen of this, to have a fair and legal trial before his peers, the jury; and it is hardly consistent with that right, that it should be left to the will or discretion of the judge, whether a representation of an actual irregularity shall be made to the pardoning power ; or to the discretion of the latter, whether that power shall be exercised in favor of a person unlawfully convicted.
Where the error appears of record, in either country, the court will arrest the judgment after a verdict of guilty; and the party may be again indicted, and tried, for the same offence. If the error does not appear of record, but arises from inadvertency of the judge, in rejecting or admitting evidence, or from misbehavior of the jury, or other cause which would be good ground [ * 535 ] fora new trial in * civil actions or misdemeanors ; justice and consistency of principle would seem to demand, that the person convicted should, upon his own motion, have another trial; instead of being obliged to rely upon the disposition of the court to recommend a pardon, or of the executive power to grant it. It is not enough, that the life of the accused will generally be safe in the hands of such highly-responsible public agents. The right of the subject to be tried by his peers, according to the forms, as well as principles, of law, is the only certain security, that at all times and under all circumstances, that protection which the constitution extends to all, will be effectually enjoyed.
Nor is it for the public safety and interest, that new trials should be refused in such cases. For it must be obvious, that in most cases of irregularity, which would be a good cause for another trial, if in the power of the court to grant it, a pardon, upon the representation of the court, would be thought to follow of course; and *433 thus, in many cases, public justice might be prevented on account of defect in form, or some irregularity, not affecting the merits of the case; which mischief might be avoided by another trial.
For these reasons we think there is a power in this Court, to grant a new trial on the motion of one convicted of capital offence, sufficient cause being shown therefor; notwithstanding the English courts are supposed not to exercise such authority; and if this opinion needs support, the case of John Fries, who, after conviction of treason, was tried a second time, and the case in South Carolina, cited at the bar from Bay’s reports, are sufficient for this purpose. In the case of The United States vs. Fries, Mr. Rawle, the district attorney, admitted the power of the court to grant a new trial; and argued only against the propriety of exercising the power in that' case. Judge Iredell expressly admitted the power; and Judge Peters, who was against a new trial, although he yielded to the circuit judge, did not deny the authority of the court to * grant it. In a late case, also, in New York, [ * 536 ] The People vs. Goodwin, which was a case of felony, it was decided that the cause might be taken from the jury, and a new trial ordered.
Assuming, then, that this Court has the power to grant a new trial in cases like the one before us, we are to inquire whether the facts upon which the present motion is founded, are of a nature to require the exercise of that power ; and, if not, whether, in the discretion of the Court, it ought now to be exercised.
If illegal testimony was admitted against the prisoner on his trial, after objection by his counsel, it would be a cause without any doubt. For, although the opinion of a majority of the Court, sitting in a capital trial, is final and conclusive, yet it is their duty to revise such opinions, as they may have opportunity ; and if any of them, materially affecting the cause, should appear to have been erroneous, for want of time and means of information in the course of the trial, it would also be their duty either to certify the fact to the executive, or to grant a new trial, if the prisoner should request it, in order that the error might be corrected. The latter course would be the most proper; for, as the Court can exercise no control over the executive, whatever, confidence they might feel in that department, they would be unwilling to commit to other hands, in a case affecting life, an error committed by themselves, or by others concerned in the trial, the regularity of which they are bound to enforce.
The supposed error in this trial is, that one of the witnesses, on behalf of government, stood convicted of an infamous crime, of which he had not been pardoned, and that thereby he was rendered incompetent as a witness. Waiving, for the present, the effect of *434 this conviction, as having taken place under another jurisdiction, we will inquire whether, supposing the conviction to have taken place in any of the courts of this commonwealth, having juris diction of the offence, or, even in this Court, it would [ * 537 ] *be a sufficient ground to entitle the prisoner, as matter of right, to a new trial.
The objection was not made at the trial. It could not have been made at that time; for the fact was probably not then known to th prisoner, certainly not to his counsel. It is very clear that the conviction of an infamous crime, and judgment pursuant to it, destroys the competency of the party as a witness. But it is equally clear that whenever that objection is made to a witness, it must be supported by the record of the conviction .and judgment. These must be produced and offered when the witness is about to be sworn, or, at farthest, in the course of the trial. If that opportunity is omitted, it is no legal cause for setting aside a verdict that such witness has testified in the cause.
All the books which treat of this subject are positive and express in the declaration, that the party objecting must be prepared *vith the record; and as some of them express it, come with it m his hand; or he shall not be heard against the competency of the witness. This rule is strict, and it ought to be so; for if any thing short of a record should be admitted to impeach the competency of a witness, it would be easy for parties accused to protect themselves from punishment; and it would be, in most cases, impossible for the witness. attacked, without previous notice, to defend his reputation. Not only must infamy be proved by record, but the objection shall not be heard without a record. For, otherwise, the witness might be disqualified without cause; and no man ought to be allowed to charge another with an infamous crime, and thereby deprive him of his standing in court as a witness, without being ready to support the charge by evidence which cannot be impugned. If the suspected witness may himself be inquired of, whether he has been convicted, or, if other evidence than the record may be given, it is only to affect his credibility; and he may contradict the evidence by testimony in favor of his character. [ * 538 ] * It being the rule, then, that objections to the com petency of a witness, founded on conviction of crime, must be made at the trial, and when the witness is offered to be sworn, it follows that, because a witness was sworn in the cause, who is since found to have been so convicted, the trial was not for that cause erroneous or irregular; and a new trial on that account cannot be demanded as a right. Whether this fact furnishes a *435 sufficient ground for the discretion of the Court to grant a. new trial, depends upon other circumstances, which will hereafter be stated. The trial cannot be impeached because a witness, against whom there was no legal objection at the time, is afterwards discovered to have been liable to an exception, which, if known, would have excluded his testimony.
It is a rule in civil as well as criminal actions, that objections to witnesses, on the ground of interest or infamy, must be made at the trial; and it is necessary that it should be so established ; for otherwise there would be no termination to suits. Parties, knowing the facts which constitute objections, would conceal them until the trial was over, for the very purpose of having two chances of success; and it would seldom be known that they had concealed their knowledge. It must, therefore, instead of being a matter of right to have a new trial for such cause, be discretionary with the Court to grant or refuse it, according to the circumstances of the case, and the pur poses of substantial justice.
It being, then, a question to be decided by the discretion of the Court, whether a new trial shall be granted, it is necessary to take into view all the circumstances of the case, with as favorable a disposition to the prisoner as may be consistent with our duty to the public, and a due regard to sound principles of justice.
We are, then, first to consider whether, if a new trial should be granted, it is certain the prisoner could avail himself of the conviction of Stoddard, so as to destroy his competency as a witness. We are by no means satisfied, *that such [*539] would be the necessary legal effect, in the courts of this commonwealth, of such a conviction in another state.
If New YorTc is to be considered on the footing of a foreign state, the difficulty of giving such effect to a conviction seems insuperable. The objection to the witness on account of infamy, must be supported by a record of the judgment. What is a record of a foreign state, and how it shall be authenticated, are questions of delicacy and difficulty, which it would be almost impossible to settle in the course of a trial, which must always proceed with as little interruption and delay as possible. Whether the facts, which would be here deemed an infamous crime, are the same which constitute the like offence in the country from which the record comes, the Court would have no means of knowing with certainty. The crime of treason is known to be different in different countries; what is felony, also, in one country, may not be felony in another ; and it is competent to the legislature of every nation, to attach disabilities to the commission of offences; which, by the laws of other nations, may be wholly without such consequences.
*436 Tlius one state may enact that the detention of another’s property after demand by the owner, shall be deemed and taken to be larceny, and punished as such ; and that a general description of the offence, in the indictment, should be sufficient; so that a foreign court could never know, by inspection of a copy of a record, what were the ingredients of the crime which had been punished.
So, also, the non-payment of a debt may be branded with infamy by the laws of any country, and designated by some term usually denoting the crimen falsi; and this class of crimes may be enlarged so as to comprehend transactions which in other countries are considered venial, or, at least, not criminal.
If the common law were unchangeable, the courts of countries which adopt it as part of their code, might know with [ * 540 ] certainty the nature and character of crimes ; but * while every country has its legislature, which has a right to alter or repeal the common law, such certainty cannot be attained. Treason, by the common law, renders the convict infamous; but many acts are made treason by positive enactments in one country, which would not be so in another. The .infamy, therefore, consequent upon treason, ought not to pass beyond the country in which the crime is committed.
Another objection to receiving such evidence for such a purpose, is, that a person,-who may have left his native country convicted of crime, however long he may have lived in his adopted country, and whatever reputation he may have acquired by a course of upright and honorable conduct, has no means of being restored to credit. For the pardoning power of the country where he resides, cannot reach an offence committed without its jurisdiction. And thus it may happen that a naturalized citizen, who, by his virtue and talents, and a long course of irreproachable conduct, may have obtained the confidence of his fellow-citizens, and even their suffrages for the most important offices, may be met in a court of justice by some obsolete record of a conviction of some crime, perhaps merely political, which may be deemed infamous in the country from which he came; and can have no power of effacing the stain, without soliciting a pardon where he may be wholly forgotten, and where there can be no evidence of such a change of life and manners as would entitle him to the clemency of the offended power.
It is these difficulties, with others which might be mentioned, which justify the principle that appears to be adopted by the English courts; and which we are disposed to think is a maxim of general law, recognized by al nations, viz. That the penal laws of a country do not reach, in their effects, beyond the jurisdiction *437 where they are established. It is so laid down by an eminent judge in the case of Folliott vs. Ogden, 1 H. Black. 131, and in a treatise of public law by Martens, the same principle is * advanced in more extensive and unlimited terms. In [ * 541 ] the 24th section of his work he says, “ The criminal power being confined to the territory, no act of its authority can be exercised in foreign countries without violating their rights.” In the 25th section he says, “ By the same principles a sentence, which attacks the honor, rights, or property of a criminal, cannot extend beyond the limits of the territory of the sovereign who pronounced it. So that he who has been declared infamous in one country, is infamous in a foreign country in fact, but not in law;” which terms the author probably uses in allusion to the civil law, resembling, in some degree, our distinction between competency and credibility. By infamia juris is meant infamy established by law as the consequence of crime ; infamia facti is where the party is supposed to be guilty of such crime, but it has not been judicially proved. “ And the confiscation of his property cannot affect his property situated in a foreign country. To deprive him of his honor and property judicially there also, would be to punish him a second time for the offence.” To refuse a man the right to be a witness on account of a conviction in another country, would be to suffer that conviction to have force here, and, in some measure, to carry it into execution.
If it be said that it will be dangerous to the lives and reputations of the citizens, that foreigners, who have been rendered infamous abroad, should be admitted to testify against them, the answer is, that their former condition and character may be made known to the jury to enable them to judge of their credibility; and this without depriving them of any valuable personal right by reason of their conviction abroad. Their right to stand in court as probi et legales homines is sustained; but .as all other men, the value of the testimony is to be estimated by their general reputation, and, even, by the proof of particular facts showing a conviction and punishment for crime; and the effect of such proof may be always rebutted by evidence of good conduct, a virtuous life, &c.
* Infamy is, in truth, part of the punishment of the [ * 542 ] crimen falsi, although not expressed in the sentence; and it creates a disability to testify, just as excommunication in a spiritual court does to sue in the courts of common law. To hold a person incompetent on account of such a conviction, is to give effect to the conviction, and to enforce the punishment; and thus *438 the penal laws of one country would reach into others, contrary to the principle above stated.
It would seem to be consistent with sound principles, also, that, wherever there is a crime or punishment remaining in force, there should be a power of pardon ; but the act of pardon cannot operate upon an offence committed under another jurisdiction; nor can it extend beyond the jurisdiction of the offended sovereign. So that one who has once exposed himself to a punishment which renders him infamous in the country where the offence was committed, must be perpetually stigmatized if he remove into another country. This is sufficient to show the reasonableness of limiting the penal effects of crime to the country whose laws have been violated.
We do not find, after a careful examination, as well by the counsel for the prisoners, as by ourselves, that the question before us has arisen in the English courts, or in those of any of the United States. All the cases in the English books in which objections were made to the competency of witnesses on the ground of infamy, seem very clearly to have been cases of conviction in some of their own courts. Indeed the strictness of the rule under which such evidence is admitted, seems almost necessarily to exclude convictions in any foreign court. The objector must have the record in his hands, and must show not only a conviction, but a judgment thereon. We think the silence of the English books on this subject, even among the multitude of treatises on evidence, which have lately issued from the press, furnishes strong reasons to believe that objections of this nature, if heard at all, only go to the credibility of witnesses. [ * 543 ] * The only book we have seen, which intimates a different doctrine, is one upon the principles of evidence, by a Mr. Glassford of Scotland, referred to in the argument for the prisoner ; a respectable writer, but hitherto unknown to the courts of law in this country. Speaking of incompetency by reason of infamy, he inquires into the proof necessary to establish the fact; and supposes that an exemplification of a record, from England or Ireland, would be received as proof in Scotland. How far the peculiar organization of the Scotch courts, and the system of rules by which they are governed, may have had an effect on their law of evidence, we cannot know; nor whether the circumstance, that the three countries are under one sovereign, and one legislative power, may not have had its effects. The examples produced by the writer are from England and Ireland only; and from tl tis it would seem that his doctrine would not apply to the records of a *439 country strictly foreign. Indeed such records cannot properly be exemplified; but must be proved by testimony, as other facts are proved.
But it has been argued by the counsel for the prisoner, that, although a conviction in a court of a country strictly foreign, should not be held to take away the competency of a witness, yet that such is the relation of the several states which compose the American Union with each other, that the same law ought not to prevail here ; as the states are not in fact foreign to each other.
If this position is true, it must result from the constitution of the United States only ; for without that, the several states were entirely independent of each other, and as completely foreign one to the other, except so far as temporary confederacies may have united them, as any separate European governments. Whatever change exists in this relation, must be sought for in the constitution of the United States, and the laws of congress made pursuant thereto.
The provision of that constitution is, that “ full faith and credit shall be given in each state to the public acts, * records, and judicial proceedings of every other state; [ * 544 ] and the congress may, by general laws, prescribe the manner, in which such acts, records, and proceedings, shall be proved, and the effect thereof.” By this provision, separate from any act of congress pursuant to the authority therein given to that body, nothing more is established than that public acts, records, and 'udicial proceedings, when duly authenticated in the manner which congress should afterwards prescribe, should be received, as conclusive evidence of the facts they were intended to establish in all the courts of the Union ; leaving to those courts the power of giving such effect to records so authenticated, as the laws by which they were governed should require ; and this effect might be different in different states, according as their own local rules, or the principles of the common law, should prevail with them. But it was desirable that uniformity upon so important a subject should exist; and, therefore, the power was given to congress, to declare, by general laws, the effect of such records.
The act of congress, which was passed soon after the organization of the government under the constitution, viz., in the year 1790, in execution of this power, unhappily is not expressed in such terms as to remove all doubt as to the effect of judgments in states, other than those in which they were rendered. This act, after providing the manner in which records shall be authenticated, declares that they shall have the same faith and credit given to them, in every court within the United States, as they have, by law or usage, *440 in the courts of the state from whence the said records shall be taken.
If there is any difference between the faith and credit given to a record of a judgment, and the effect of such judgment, it would not seem that congress, by this act, had done any thing more than was previously provided in the constitution, except as to the mode of authentication. For by the constitution itself full [ * 545 ] faith and credit must be * given; and that could not be, unless it had the same faith and credit in another state, which it would have in the state from whence it was taken. That there is an essential difference between faith and credit, and effect, would seem to follow from the different application of the terms, as used in the constitution. That instrument itself establishes the faith and credit of records; but their effect is left unprovided for, except in the power given to congress to legislate upon the subject.
Courts in the different states, and judges in the same state, have varied in their construction of the constitution, and of the act of congress upon this subject; some holding that the effect, by which they mean the legal import and obligation of judgments of another state, is still left open' to be decided by the common law; others that the terms “ faith and credit,” as used in the act of congress, mean the same thing as the term “ effect,” and that this effect being the same in the state where they are used, as in the state from whence they come, they are in all respects like domestic judgments, as to their conclusiveness against the party who is the subject of them.
In this commonwealth the construction of the constitution, and of the act of congress, must be considered as definitively settled in the case of Bissell vs. Briggs, 9 Mass. Rep. 462. The decision in that case is, that judgments rendered in other states are not merely foreign judgments, hable to inquiry into their merits, being only prima facie evidence of debt; nor entirely domestic, so as to preclude any inquiry into the jurisdiction of the courts, in which they are rendered; but that, if the Court had jurisdiction, they are to all intents and purposes as effectual and uncontrollable, as judgments rendered in our own courts. It would seem by the opinion of Chief Justice Parsons, delivered in that case, that the jurisdiction of the Court may be inquired into, as a matter of fact, on a plea of nil debet; and that, if the want of jurisdiction should be established by the defendant, he will prevail on that issue. * 546 ] *The Supreme Court of the United States have carried the sanctity of judgments still further, having in *441 the two cases of Miles vs. Durfee, 7 Cranch, 481, and Hampden vs. M’Connel, 3 Wheaton, 234, decided that nil debet is not a good plea to an action upon a judgment of another state; and, indeed, that no plea would be good, except such as would be allowed in the courts of the state, in which the judgment was rendered; thus establishing an identity, in operation and effect, between judgments rendered in the courts of the same state and in those of other states. Over a question of this nature, the construction of the constitution and laws of the United States, that Court has the final and conclusive authority; so that their decision must be taken to be the law of the land. There can be, therefore, while these decisions stand, no further doubt as to the effect of the judgments of the courts of one state in those of another.
Then comes the question of the application of this principle to the case now before us—Does the conviction of an infamous offence, proved by the copy of a record of a court of competent authority in the state of New York, render the subject of such conviction incompetent as a witness in the courts of this state ? We do not think that this follows from any principles yet established; for there is a manifest distinction between the judgments of another state in civil actions affecting property only, and judgments on criminal prosecutions; and there is reason to believe, that the pro vision in the constitution had respect to the former only. It must be supposed that, when the people declared in the constitution, that full faith and credit should be given to the judgments of each state respectively, they must have intended such judgments, as could, by the aid of courts of states, other than those in which they were rendered, be carried into execution and effect; as may be done with respect to judgments in all civil actions. But it is manifest, that a judgment on a criminal prosecution cannot be carried into effect, beyond the jurisdiction of the * state, [ * 547 ] within which the offence was committed; or, if this might be done by virtue of any act of congress, founded upon such a construction of the constitutional provision, it is clear that such power has never been challenged ; and it is hardly possible to conceive that such a construction will ever be adopted, so long as any portion of sovereignty remains with the states. For the right and duty of punishing offences must necessarily be limited to the authorities, against which the offences have been committed. Indeed the provision in the second section of the fourth article of the constitution of the United States is wholly inconsistent with the supposition of such a power.
That section provides that “ A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be *442 found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crimed’’ This is a perfect recognition of the independent sovereignty of the states, in regard to crimes committed within their territory, as well as of the local nature of crimes and punishments. If the faith and credit, to be given to judicial proceedings, relates to criminal as well as civil judgments; and that faith and credit, according to the act of congress, as construed by the Supreme Court of the United States, means that the judgment shall have the same effect in the state in which it is produced, as in that in which it was rendered, it would follow, that an unexecuted sentence in one state might be executed in another; which never was intended. On the contrary, the constitution has merely made that obligatory between the states, which between nations entirely foreign to each other was done from comity, viz., the delivering up of criminals who have fled from justice.
I think this proves satisfactorily, that the clause in the constitution of the United States, relating to the faith and credit to be given to judgments, has no effect whatever on judgments upon [ * 548 ] criminal suits; and that, in this respect, * the relation of the states to each other is left wholly unaffected by the constitution.
This will readily be admitted in regard to any direct effect of such judgments, upon the persons of such fugitives, as may be found within our territory. No one supposes that they can be proceeded against and punished, either in their persons or property, in virtue of any judgment, which may stand against them in the state from which they fled. Why then should they be collaterally affected by the consequences of any such judgment ? A disparagement of character, and incompetency to testify, are a part of the punishment of crime, either at the common law, or by statute. If the penalty do not extend beyond the jurisdiction, against which the crime was committed; then incompetency, which is the effect and consequence of crime, and part of the penalty, cannot reach beyond the limits of the state, whose laws have been violated.
It has, however, been said that it is the infamy which takes away the right to testify; and that the fact of infamy, being proved by the record of the conviction and judgment, is incontrovertibly established; and, therefore, incompetency must follow. But if, by the constitution of the United States, the faith and credit, to be given to a record of a judgment ot another state, has no relation to criminal proceedings; then it has been *443 shown, I think, that such record cannot be received to exclude a witness.
If it should be provided by the laws of New York, that a person convicted of bribery at an election should be disfranchised, and one thus convicted should remove into this state, and reside here the term provided in our constitution to make him an elector, could he be deprived of this privilege on account of such conviction ? Certainly not; because the penal laws of one state do not extend into any other, and yet, if such conviction had the same effect here as in New York, such would be the consequence.
For the foregoing reasons, and others which it would * require too much time to enumerate, we have come [*549] to the opinion that there is no difference in the effect of a conviction, in regard to the competency of a witness, between any state in this Union and any foreign state ; and that in neither case is the witness to be excluded on account of such conviction.
Whether such conviction could be offered to the jury, for them to weigh against the credit of the witness, is a different question ; which need not be decided now; for we are all clearly of opinion, for the reasons which will be now stated, that, if the only effect of the conviction would be to impeach the credibility of the witness, it is no sufficient ground for a new trial.
Proceeding upon the ground, that the witness would have been permitted to testify, had the fact since discovered been known, and presented to the Court, at the time of the trial; and that, if the law were otherwise, there would be no right to a new trial; because there was no error or irregularity in the course of the trial; it has come to a question of discretion with the Court, whether a new trial shall be allowed, because the evidence now obtained might affect the credibility of this witness, and by possibility might have occasioned doubts in the minds of the jurors, sufficient to have produced an acquittal.
Certainly cases may arise, when the exercise of this power in the Court would be salutary and wise ; but every case of discretion must depend upon its circumstances, and be judged of with due regard to the rights of the public, as well as the interest of the prisoner. In cases which affect life, duty as well as inclination would insure the most favorable consideration of all circumstances, which might have a tendency to protect innocence from punishment, and even to extend to the guilty all the legal advantages of a trial. But when there has been a trial, which the Court are satisfied was fair and impartial, and in which all the legal rights of the party accused were observed, and a new trial is sought for; the Court are *444 [ * 550 ] * bound to look into the evidence, upon which the verdict was founded, in order that they may ascertain whether the cause, suggested in support of the motion, is such as would or ought to produce a different result in the minds of another intelligent jury. It is true, it cannot be known what effect may be produced upon other men’s minds, by any specific kind or degree of evidence; and with that, in the course of the trial, the Court have no concern; but on a motion to their discretion, they must necessarily revise the evidence, and must judge for themselves, of the probable bearing of the circumstances, relied on to support the motion.
Having decided that to grant new trials in capital cases, is within the power of the Court; that the exercise of this power, where there has been no error on the trial, is discretionary; if every suggestion should be listened to, without regard to the merits of the case, or the just bearing of the fact suggested, it is certain that the course of public justice would be much obstructed ; and that the punishment of crimes would often be evaded. It is a power to be used sparingly for the protection of innocence, not to screen the guilty.
Now, in the case before us, the only advantage the prisoner would have on another trial, which he had not before, would be to show that Stoddard, one of the witnesses who testified against him, was not deserving of credit; because he had been convicted of larceny in New York. If this witness had gone to the jury wholly unimpeached, and his testimony had been material and "uncorroborated, the case would be a strong one for the exercise of the discretion of the Court, ;n granting another trial.
But this witness was impeached at the trial, by the evidence of two convictions of larceny within the commonwealth ; and it was known to the jury that he had but just left the public prison, under a pardon granted by the executive, for the sole purpose of rendering him a competent witness. Surely evidence of [ * 551 ] another conviction * of a similar offence in another state, of which he had not been pardoned, would have added nothing to the weight of evidence against his credibility. He was considered as a degraded person, both by the Court and jury ; and in the charge to the latter by the Court, they were expressly told that, unless they found his testimony corroborated by unimpeached witnesses, he ought not to be believed. The same observations applied to another witness, who appeared under similar circumstances.
In the opinion of the Court, there was sufficient evidence to justify the verdict without the testimony of either of those men *445 An Insurrection had taken place among the prisoners. The man, with whose murder the prisoner is charged, was found beaten and mangled in a cruel manner. The prisoner was seen, with many other convicts, rushing from the place where the murdered man lay, in pursuit of another victim, who was seized by the prisoner, and in danger also of being murdered, had he not been rescued by the officers of the prison. The prisoner, and one other convict who was tried with him, was armed with a club or bar of iron. The prisoner uttered expressions indicative of the deed which had been done, and of his intentions to wreak his vengeance upon others. These facts were proved by respectable officers of the prison, and were uncontradicted.
Had there been no other evidence, any firm and intelligent jury would have found the prisoner guilty. In addition to this, the two pardoned convicts swore positively to the blows having been given by the prisoner, which caused the death of the murdered man. Both these last witnesses were impeached, as to their credibility, by their convictions.
Now, we cannot believe that, had the jury known of the conviction of Stoddard in New York, that fact would have weighed a feather in estimating his testimony. Neither can we believe that another jury, acting upon fair principles, would be differently affected by the fact.
* Under these circumstances, to grant a new trial would [ * 552 ] be only to prolong the suspense, and-increase the anxiety of the prisoner, without any final advantage to him; and we do not feel authorized to surrender the principles of justice, to feelings of compassion or sympathy.

Motion overruled.