### COMMONWEALTH *vs.* GEORGE HALL.

An indictment under Gen. Sts. *c.* 162, § 6, is not bad for duplicity, which charges in the
    same count that the defendant " uttered " and " passed as true " a counterfeit bank
    bill.

Evidence that the defendant had been employed in printing parts of genuine bank bills is
    competent for the purpose of showing guilty knowledge, in an indictment for uttering
    and passing as true counterfeit bank bills; and so also is evidence that on being arrested
    the defendant swallowed a counterfeit bank bill similar to those passed by him a short
    time before.

No exception lies to the admission of witnesses who have not obeyed an order of the judge
    excluding them from the court room until called to testify.

Under Gen. Sts. *c.* 131, § 13, the conviction of any crime may be shown to affect the credi-
    bility of a witness.

INDICTMENT containing two counts, each of which charged
that the defendant " did utter and pass as true " a certain false,
forged and counterfeit bank bill. At the trial in the superior
court, before *Wilkinson,* J., the defendant was convicted and

alleged exceptions. The facts sufficiently appear in the opinion.

No counsel appeared for the defendant.

G. P. Sanger, (district attorney,) for the Commonwealth.

CHAPMAN, J. 1. The indictment is objected to because in each count it alleges that the defendant " did utter and pass as true " a certain counterfeit bank bill. It is contended that the language cited alleges two distinct offences : one offence being to " utter " the bill ; and the other and distinct offence being to " pass as true " the same bill. The Gen. Sts. c. 162, § 6, provide a punishment for " whoever utters or passes, or tenders in payment as true " any such note. This language describes but a single offence, and the indictment describes it in the usual form. It is entirely free from duplicity.

2. The evidence that the defendant had been employed in the business of printing parts of genuine bank bills was pertinent for the purpose of showing his knowledge in respect to bills. It tended to show guilty knowledge that the bills he passed were counterfeit.

3. The evidence that he swallowed another counterfeit bill, which he had in his possession at the time of his arrest, the morning after the commission of the offences alleged in the indictment, the bill being similar to those passed by him the evening before, was also pertinent; for it tended to prove guilty knowledge and a guilty intent. Commonwealth v. Shepard, 1 Allen, 575.

4. It was within the discretion of the judge to admit the witnesses who had been ordered to be excluded from the court room during the trial to testify, although the order had not been obeyed by them. 1 Archb. Crim. Pr. (Waterman's ed.) 574 & cases cited. It is necessary that the making, modifying and revoking of orders relating to the course of the trial shall be left to the discretion of the presiding judge.

5. The evidence that the defendant's witness, Daniels, had been convicted of keeping a house of ill fame, was properly admitted to impeach him. It is suggested that by the true construction of Gen. Sts. c. 131, § 13, the crimes which may now

Commonwealth *v.* Hall.

be proved to impeach a witness are only those which might formerly have been proved to exclude him. But by recurring to *St.* 1852, *c.* 312, § 60, which was the original act on this subject, we find the provision contained in a separate sentence, which is as follows: " And the conviction of any crime may be shown to affect the credibility of any person testifying." This language is clear; and there is no reason to suppose that there was any intent to change the law by the General Statutes. The change of phraseology for the purpose of abbreviation has given rise to the doubt.

Before the *St.* of 1852 was enacted, the law respecting the competency and impeachment of witnesses had become very unsatisfactory. A person convicted of felony within the state was incompetent; but if he had committed a similar felony beyond the state line, though but ten feet distant, it did not affect his competency. A criminal under sentence in the state prison was not competent to prove a crime which he saw committed there; but if pardoned for the mere purpose of enabling him to testify, though there was no evidence of his reformation, he was competent. *Commonwealth* v. *Green*, 17 Mass. 514. A conviction of the offence of obtaining goods by false pretences, the very essence of which is falsehood and fraud, could not be proved either to exclude or to discredit a witness. The same was true of a conspiracy to defraud. *Utley* v. *Merrick*, 11 Met. 302. But a conviction of a petty theft rendered the witness incompetent. These distinctions are artificial, and have no basis in sound reason; and in conformity with the modern idea that the sources of evidence ought to be enlarged, they were abolished. Convicted criminals may now testify; and the conviction is made competent evidence to affect their credibility. It is obvious that some offences that are not felonies may affect one's credibility much more than some felonies. For example: the keeper of a house of ill fame, or a person convicted of obtaining goods by false pretences, has at least as little claim to confidence in his veracity as one who commits a petty theft. There are other offences which may affect one's character for veracity less; but there are few, if any, which do not aid a jury

in forming a just estimate of the character and credibility of a witness. But where a record is offered for the obvious purpose of wounding the feelings of the witness without cause, it will be likely to reäct upon the party producing it; and therefore there cannot be much danger of its introduction in such cases by parties who understand their true interests.

*Exceptions overruled.*