*In re* IRA N. TERRILL.

**No. 13,139.**   ( 71 Pac. 589.)

SYLLABUS BY THE COURT.

1. OKLAHOMA CONVICTS—*Imprisonment in Kansas Held Legal.* The petitioner was convicted of manslaughter in the district court of Noble county, Oklahoma, and sentenced to confinement in the territorial penitentiary at Lansing, Kan., where he is now imprisoned, for a term of twelve years. A statute of the United States, then and now in force, provides "that the legislative assemblies of the several territories of the United States may make such provision for the care and custody of such persons as may be convicted of crime under the laws of such territory as they shall deem proper, and for that purpose may authorize and contract for the care and custody of such convicts in any other territory or state, and provide that such person or persons may be sentenced to confinement accordingly in such other territory or state, and all existing legislative enactments of any of the territories for that purpose are hereby legalized." *Held*, that this act of congress, which is the supreme law of the land, authorizes the prisoner's detention in the Kansas penitentiary, and that he is legally held in custody by virtue thereof.

2. —————— *Act of Kansas Legislature not Necessary.* The legislature of Oklahoma territory, acting under the power granted by the act of congress set out in the preceding paragraph, passed an act authorizing it sgovernor to contract, in the name of the territory, with the proper authorities of some other state or territory for the care and custody of such persons as might be convicted of crimes punishable in the penitentiary by the laws of

· Oklahoma. , Under this law a contract to that effect was made
· by such governor with the warden and directors of the Kansas
penitentiary. The contract has been recognized by the officers
of this state since it was made, including the governor in his mes-
sage to the legislature, and payments have been received by. the
state from Oklahoma for the maintenance of its prisoners. *Held*,
that such official conduct and declarations amount to an acqui-
escence on the part of the state of Kansas in the validity of the
contract, and the fact that the warden and directors of the peni-
tentiary were not authorized by legislative act to enter into
the agreement under which the petitioner is held cannot avail
the prisoner and furnish grounds for his discharge.

Original proceeding in *habeas corpus*. Opinion filed
February 7, 1903. Petitioner remanded.

Ira N. Terrill, *pro se.* .

*J. C. Robberts*, attorney-general of Oklahoma, and
*J. S. West*, for respondent.

· *W. H. Ashby*, as *amicus curiæ*, filed a brief for peti-
tioner.

The opinion of the court was delivered by

SMITH, J. : In December, 1894, the petitioner, Ira
N. Terrill, was convicted in the district court of Noble
county, Oklahoma, of the crime of manslaughter.
The material part of the sentence of the court reads :

"It is therefore considered, ordered and adjudged by
the court that the said defendant, Ira N. Terrill, be
confined in the Oklahoma territorial penitentiary, at
Lansing, Kan., for the period of twelve years from
the date of his delivery to the warden of the said peni-
tentiary."

To the return of the warden is attached the journal
entry of conviction and sentence. He also justifies
the prisoner's detention by setting forth a written con-
tract dated July 1, 1898, between H. S. Landis, war-
den of the Kansas penitentiary, and C. M. Barnes,

governor of Oklahoma, wherein the former agrees to receive and keep in said penitentiary all prisoners convicted of crime, whose sentence under the laws of the territory of Oklahoma is confinement in a penitentiary for one year or more. This contract was approved in writing by the board of directors of the Kansas state penitentiary. There is no statute of this state authorizing the warden or directors of the penitentiary to contract with the authorities of Oklahoma for the keeping of territorial convicts.

To determine the legality of the prisoner's restraint, it is necessary to consider the scope and effect of the act of congress having relation to the imprisonment of territorial convicts in penitentiaries beyond the boundaries of the territory where the crime was committed and the conviction had, and also the relation which territories sustain to the United States. In *National Bank v. County of Yankton*, 101 U. S. 129, 132, 133, 25 L. Ed. 1046, it was said:

"It is certainly now too late to doubt the power of congress to govern the territories. There have been some differences of opinion as to the particular clause of the constitution from which the power is derived, but that it exists has always been conceded. . . . It has full and complete legislative authority over the people of the territories and all the departments of the territorial governments. It may do for the territories what the people, under the constitution of the United States, may do for the states."

The act of congress of June 16, 1880 (21 Stat. at Large, 277), provides:

"That the legislative assemblies of the several territories of the United States may make such provision for the care and custody of such persons as may be convicted of crime under the laws of such territory as they shall deem proper, and for that purpose may authorize and contract for the care and custody of

such convicts in any other territory or state, and provide that such person or persons may be sentenced to confinement accordingly in such other territory or state, and all existing legislative enactments of any of the territories for that purpose are hereby legalized.''

Under this congressional authority, the legislature of Oklahoma enacted the following statutory provisions ( Stat. Okla. 1893, ch. 64) :

"(3680). § 1. The governor of the territory of Oklahoma is hereby authorized and empowered to contract, in the name of this territory, with the proper authorities of some other state or territory, for the care and custody of such persons as may be convicted of crimes punishable in the penitentiary, by the courts of this territory and to bind this territory to the faithful performance of such contract or contracts."

"(3686). § 7. That in all cases where persons have been or may hereafter be, by the courts of this territory, sentenced to incarceration in the penitentiary, it shall be lawful for any officer of this territory having such persons in charge, to convey them from this territory into any other state or territory where provisions may have been made for their incarceration.

"(3687). § 8. That such conveyances of such persons shall, under section 3688, be held and deemed to be a case especially authorized by law within the meaning of that section, and such imprisonment without the territory of Oklahoma is hereby declared to be legal."

The rightful detention of the prisoner does not, in our judgment, depend on whether this contract with the governor of Oklahoma was made by persons having statutory authority from the state of Kansas. The prisoner was convicted in a territorial court which derived its power and jurisdiction from the organic law of the territory, which is an act of congress. The federal statute above quoted authorizes the custody and punishment of its convicts in any other state

*In re* Terrill.

or territory.   The petitioner's conviction and sentence being regular and lawful, to carry it out is a mere detail.   The acts of congress are, under the constitution, the supreme law of the land.   The power was given by congress to the authorities of Oklahoma to make provision for Terrill's imprisonment here.   This has been done.   The federal laws are paramount and have force and effect in every state and territory in the union.

The petitioner insists that the warden must justify his detention under some law of the state of Kansas, where he is imprisoned ; that no statute of this state having been pointed out which gives authority for holding him, his discharge must follow.   If the governing body of the Nebraska penitentiary had made a contract with the territory of Oklahoma for the detention and punishment of its prisoners in the Nebraska state prison, could it be held that a convict going to his place of sentence, while *en route* from Oklahoma to the Nebraska penitentiary, and traveling through this state, would not be lawfully in custody under federal authority during the time he was in the state of Kansas?   In such case no law of Kansas could be cited which would justify the holding of the prisoner while in this state, yet his rightful detention by force of the federal laws cannot be denied.   If the all-pervading force of congressional laws relative to the government of territories will hold a territorial convict going through this state for one day without reference to state statutes, the same laws will justify his imprisonment here for a longer time, and operate to make his detention lawful when undergoing punishment at hard labor in our penitentiary for a term of years.

The case of *Ex parte Karstendick*, 93 U. S. 396, 404, 23 L. Ed. 889, is directly in point against the con-

tention of the petitioner. There the prisoner was convicted of an offense against the United States in the district of Louisiana. He was sentenced to be confined in the penitentiary of the state of West Virginia. He sued out a writ of *habeas corpus* in the supreme court of the United States. In answer to the objection that there was no agreement by the state of West Virginia authorized by the legislature for the detention of the convict in that state, the court said :

"It is further insisted on behalf of the petitioner, that the legislature of the state of West Virginia has not given its consent to the use of the penitentiary of the state by the United States for the punishment of their criminals, and that for this reason the order for his confinement there is void. The petitioner is actually confined in the penitentiary, and neither the state nor its officers object. Congress has authorized imprisonment, as a punishment for crimes against the United States, in the state prisons. So far as the United States can do so, they have made the penitentiary at Moundsville a penitentiary of the United States, and the state officers having charge of it their agents to enforce the sentences of imprisonment passed by their courts. The question is not now whether the state shall submit to this use of its property by the United States, nor whether these state officers shall be compelled to act as the custodians of those confined there under the authority of the United States, but whether this petitioner can object if they do not. We think he cannot. So long as the state permits him to remain in its prison as the prisoner of the United States, and does not object to his detention by its officers, he is rightfully detained in custody under a sentence lawfully passed."

We take judicial knowledge of the fact that for many years the state of Kansas has acquiesced in the confinement in our penitentiary of Oklahoma prisoners. The official reports of state officers show the receipt

*In re* Terrill.

of money from the territory of Oklahoma for their maintenance.   The message of the governor, delivered to the present legislature, recognizes the care and custody by the state of a large number of Oklahoma prisoners serving sentences at Lansing.   By unanimous consent of the warden and directors of the prison, expressed in writing, provision is made for their maintenance until discharged at the expiration of the time for which they were sentenced.

The petitioner was sentenced to be confined in the Oklahoma territorial penitentiary at Lansing, Kan. He is now held under the exact terms of his sentence, and the only complaint is that the place of his confinement is in Kansas instead of Oklahoma.   He is confined in such a prison as the act of congress authorizes, and is undergoing no greater or different punishment than that imposed by the court in which he was convicted.   Convicted for the infraction of a valid law, in a legally constituted court, and sentenced to confinement and hard labor for a period authorized by the territorial statutes, and at a place which, under the act of congress, may be selected for his punishment, and which has been selected as above shown, we think the imprisonment of the petitioner is rightful.

The other grounds for discharge set forth in the petition were passed on by this court in a former application heard in 1897.   It was decided that the place of the commission of the crime was a matter for the consideration of the trial court, and that the question of former jeopardy could not be inquired into in a *habeas corpus* proceeding.   (*In re Terrill*, 49 Pac.158.)

The writ will be denied.

JOHNSTON, C. J., CUNNINGHAM, GREENE, MASON, JJ., concurring.

21—66 KAN.

POLLOCK, J. (concurring) : I concur in the decision reached in this case, from a consideration of the act of congress of June 16, 1880, alone.

The restraint of the petitioner is admitted, and, therefore, respondent must justify under some positive law binding on him. In my judgment the act of congress has a twofold purpose, the one, conferring power upon the territorial courts passing judgment on tried and convicted offenders against the laws of the territory to sentence such offenders to confinement in the penal institutions of another state or territory; the other, granting power to the legislative assemblies of the territories to authorize the proper officers of the territory to make contracts for the purpose of carrying such sentence into effect. The power of congress to legislate for the government of the territories and the inhabitants thereof, if not expressly granted by section 22 of article 4 of the federal constitution, is no longer an open question. (*National Bank v. County of Yankton*, supra.) This act of congress is a part of the supreme law of the land. Under the judgment against petitioner entered in accordance with the supreme law of the land, the warden of the penitentiary, as respondent, may and does justify the incarceration of the petitioner. This he may do. Whether the contract between the territorial officers and the board of directors and warden of the penitentiary of this state is valid and binding is of secondary importance, and cannot be inquired into by the petitioner in this proceeding.

SMITH, J. (dissenting) : With due respect for the opinion of the majority as expressed above, I cannot concur in it. We are dealing now with the personal.

*In re* Terrill.

liberty of the citizen, a sacred right, which can be affected only by positive law, duly administered.   The penal laws of another state or territory are foreign laws in this state.   They are strictly local and affect nothing more than they can reach.   (Story, Confl. Laws, 8th ed., 840, 841.)   A person convicted of an infamous offense is not thereby rendered incompetent to testify as a witness in another state.   (*Commonwealth v. Green*, 17 Mass. 514.)   In our courts the laws of other states must be proved as facts before they can be noticed.   (*Hunter's Adm'r v. Ferguson's Adm'r*, 13 Kan. 462.)   While full faith and credit must, under the constitution of the United States, be given to the public acts, records and judicial proceedings of every other state (which has been held to include a territory), yet such records, judgments and proceedings do not have, under the constitutional provision, the same *effect* in other states.   (*Commonwealth v. Green*, supra.)   The laws enacted by the territorial assembly of Oklahoma are not laws of the United States.   They sustain the same relation to the federal government that the ordinances of a city do to the state.   In *National Bank v. County of Yankton*, cited in the opinion of the court, Chief Justice Waite said :   " Congress may legislate for them ( territories )   .   .   .   as a state does for its municipal organizations."

My associates lay much stress on the provisions of the act of congress which reads :

" That the legislative assemblies of the several territories of the United States may make such provision for the care and custody of such persons as may be convicted of crime under the laws of such territory as they shall deem proper, and for that purpose may authorize and contract for the care and custody of such convicts in any other territory or state; and provide that such person or persons may be sentenced to con-

finement accordingly in such other territory or state, and all existing legislative enactments of any of the territories for that purpose are hereby legalized.''

That congress has power to legislate for the territories is not denied. I do, however, deny that the above enactment is self-executing, or that it empowers the territorial officers, having a convicted felon in charge, to carry him into this state for punishment without further territorial legislation to that end. There is a law, however, set out in the majority opinion, consisting of three sections of the Oklahoma statutes, giving authority to the governor of that territory to enter into contract with the proper authorities of any other state or territory for the care and custody of convicted persons. These sections of the statute have been proved to us on the hearing as facts. They have no force here as legislative acts. Under their authority the governor of Oklahoma has entered into a contract with the warden of the Kansas penitentiary, but I deny its validity for lack of mutuality. There is no vestige of legal authority for the making of it in existence under the laws of this state.

It will not be denied that Terrill could not have bound himself by contract with the governor of Oklahoma to go into confinement in the Kansas penitentiary. Liberty is an inalienable right. A state can contract only through officers authorized by express legislative grant of power to do so, or by direct law. It is said, however, that the executive officers of the state and the legislature have acquiesced in it. This I deny. They have acknowledged the fact that Oklahoma convicts were in the penitentiary at Lansing. So have the convicts themselves, except Terrill, acquiesced in the lawfulness of their restraint for several years, and many of them have served out their terms

*In re* Terrill.

of sentence. This recognition of the fact of confinement does not attest its legality nor retroactively validate a contract gratuitously made by certain state officers wholly lacking in legislative authority to bind their principal.

We must inquire, in such cases, whether the party imprisoned is deprived of his liberty by due process of law. If a question of civil obligation and liability should arise under this contract, could it be said that the state by any act of its officers, in recognition of its validity, had estopped itself from denying the binding force of the agreement? Can the warden be compelled by mandamus to take Oklahoma convicts which he has agreed in his contract to receive? Can the state of Kansas, upon the default of Oklahoma to pay for feeding its prisoners, recover on the contract? Does that which was done by the governor, the warden and the directors of the penitentiary or other officers operate as an estoppel against the state? If there were a law of this state declaring it competent for the warden and directors of the penitentiary to enter into this contract, a question would arise not presented in this case.

No person can be deprived of his liberty here except by due process of law; that is, either by state law or the paramount federal law. The prisoner's detention is by virtue of neither. He is restrained by process of fact. The act of congress above quoted, giving authority to the legislative assemblies of the territories to make provision for the care and custody of territorial convicts, lodges the power granted to be exercised by the territorial legislature. Without an act of the assembly of Oklahoma (which, as stated, can have no extra-territorial force) congress has not undertaken to exercise its superior power of sending

the territorial prisoners here, which it might, no doubt,. do. The fact that congress authorizes a territorial legislature to enact a law does not give such law, when passed, the force of an act of congress. The authorization does not make the territorial act the supreme law of the land. This state has, by express statute, made it the duty of the warden of the penitentiary to keep any criminal convicted of a crime against the United States and sentenced to imprisonment therein by any federal court. (Gen. Stat. 1901, § 7049.) There is no such power, however, vested in the warden respecting persons convicted in the courts of any other state or territory.

The illustration made in the majority opinion for the purpose of showing that a prisoner on his way from Oklahoma to Nebraska to undergo imprisonment in the latter state would not be discharged by our courts, though not in custody by virtue of our laws, is not apt. If the contract for his imprisonment were lawfully made by Oklahoma and Nebraska, it can be answered as the majority say about Terrill's incarceration now—that the prisoner's detention would be a mere incident to his conviction. It is probable that by comity between nations, in the absence of treaties on the subject, a person convicted in England of a crime, and lawfully sentenced to be transported, might be carried through the United States by the English authorities to some place of punishment beyond the United States, an English penal colony, and that his detention here while *en route* would be lawful. It is a sufficient answer to the question put by the majority, based on a hypothetical case, to say that the facts of the supposed case are not the facts involved here.

Congress did not reserve to itself in the statute

quoted the power of sending Oklahoma prisoners to another state, but delegated that power to the Oklahoma legislature, to be exercised by it alone. It is only by saying that a law of a territory passed under congressional authority is the supreme law of the land that the present case can be brought within the reasoning of *Ex parte Karstendick*, referred to in the majority opinion. The attorney-general in his brief quotes from *Hauenstein v. Lynham*, 100 U. S. 483, 490, 25 L. Ed. 628, as follows :

"It must always be borne in mind that the constitution, laws and treaties of the United States are as much a part of the law of every state as its own local laws and constitution. This is a fundamental principle in our system of complex national polity."

This is merely an amplification of the language of the constitution of the United States, yet it falls far short of saying that the laws of a territory passed under congressional authority become a part of the law of every state. As well contend that ordinances of a city, enacted concerning any municipal matter about which the legislature has authorized the mayor and council to legislate, are laws of the state. When the legislature grants power to a city to pass ordinances respecting municipal affairs, the state law conferring the power or authority does not operate to do the thing which the mayor and council are given power to do. Is a state law which authorizes a city to enact ordinances suppressing nuisances violated by a person who maintains a nuisance within a city?

The argument here is that a bare congressional grant of authority to the legislature of a territory, authorizing it to enact statutes making provision for the incarceration in other states of persons convicted of violating territorial laws, is to be so construed that

such convicts can be lawfully sent to prisons in other states under the law of congress, although the territory does not exercise the authority given and passes no law on the subject. The federal statute gives the right to the territorial legislature to contract for the care and custody of its prisoners. The whole section quoted above confers such authority on the lawmaking body of the territory, and when that body acts under the grant the expressions of its will are not the supreme law, and rank no higher, and are invested with no greater dignity, than the laws of any state in the union. In the Karstendick case, the prisoner violated a statute of the United States and was convicted in a federal court in Louisiana. He was sentenced to confinement in the West Virginia penitentiary. The court, in the opinion, refers to a law of the United States providing that persons convicted of crime in any court of the United States in a district or territory where there is no suitable prison shall be confined in some prison in a convenient state or territory, to be designated by the attorney-general. The latter officer designated West Virginia as a place of confinement. The case is not in point.

The petitioner here was not convicted of a crime against the United States. He is, therefore, not detained in the Kansas penitentiary by due process of the laws of the United States. He did not violate them. His offense was against the laws of a territory, enacted, not by congress, but by the legislature of Oklahoma. The law he violated prescribes a punishment for the crime. It has no force here. It comes to our knowledge as any other fact. It follows that Terrill is not held in prison in Kansas by due process of the laws of Oklahoma. It is clear that his imprisonment is not founded on due process of any law

of this state, for he is held here without law.   He is detained by contract, under an agreement made by agents of the state wholly destitute of power to bargain with respect to the prisoner's liberty.

It is foreign to the question to argue that the petitioner is suffering that punishment only which was adjudged in the sentence of the court.   Lawful imprisonment only can justify his detention.   I think the prisoner should be discharged.

BURCH, J. (dissenting) : I do not concur in the denial of the writ, and agree with the views of Mr. Justice Smith in the foregoing dissenting opinion.