[1006.]

# THE STATE OF NEVADA, RESPONDENT, *v.* JAMES FOLEY AND GEORGE TRACY, APPELLANTS.

PARDON—EFFECT OF.—A full and unconditional pardon of an offense removes all disabilities resulting from the conviction thereof.

IDEM—APPLICATION FOR PARDON—NOTICE OF INTENTION.—No notice of intention to apply for a pardon is required by the law of California when the term of imprisonment is completed.

PARDON—AFTER EXPIRATION OF TERM.—A pardon may be granted after the prisoner has suffered the entire punishment to which he has been condemned.

IDEM—ONLY APPLIES TO OFFENSES IT RECITES.—Where a prisoner has been convicted of two distinct felonies and a pardon is granted reciting only one of the offenses: *Held,* that the pardon did not apply to any offense except the one which it recites.

INCOMPETENCY OF WITNESS—INFAMOUS CRIME IN ANOTHER STATE.—A person convicted of an infamous offense in the courts of another state is rendered incompetent to testify as a witness in a criminal proceeding in this state.

APPEAL from the District Court of the First Judicial District, Storey County.

The facts are stated in the opinion.

*R. H. Taylor*, for Appellants:

I. In order to render a pardon valid, it must express with accuracy the crime intended to be forgiven. (4 Black. Com. 400; 2 Hawk. P. C. 533; *State* v. *Leak*, 5 Ind. 359; *State* v. *McIntire*, 1 Jones (N. C.) L. 1.)

And the *effect* of a pardon is to protect from punishment the criminal for the offense pardoned, but for no other. (*State* v. *Richardson*, 18 Ala. 111; *Perkins* v. *Stevens*, 24 Pick. 278.)

Here there were two convictions for two separate felonies, only one of which was included in the attempted pardon.

II. A pardon is an act of grace, proceeding from the power intrusted with the execution of the laws, which exempts the individual on whom it is bestowed from the punishment the law inflicts for a crime he has committed. (*United States* v. *Wilson*, 7 Pet. 160.)

III. The constitution of California empowers the gover-

nor of that state to pardon only " in accordance with law." (1 Hittell's Code, p. 51, sec. 13, Art. V.; *State* v. *Dunning*, 9 Ind. 22.) The governor has by law no power to pardon after the term of imprisonment has elapsed. (2 Hittell's Code, pp. 14417, 14421, 14422; *State* v. *McIntire*, 1 Jones (N. C.) L. 1.)

IV. Restoration to citizenship does not restore the qualification of a party to be a witness. (*People* v. *Bowen*, 43 Cal. 439; *Blanc* v. *Rogers*, 49 Id. 15.)

*M. A. Murphy*, Attorney-General, for Respondent:

I. The Governor of the State of California has the power to grant pardons and restore citizenship. (Const. Cal., sec. 13, Art. V.; Hittell's Codes, sec. 14417; Stat. of Cal. 1867–8, 111.)

II. The effect of a pardon, although granted after the convict had suffered the entire punishment awarded against him, was to remove the common law disability of incompetency to testify as a witness. (*State* v. *Blaisdell*, 33 N. H. 388; 1 Greenl. on Ev., sec. 377; 2 Wheeler Crim. Cases, 454, 459; *People* v. *Pease*, 3 Johns. Cases, 333.)

III. The effect of a pardon is to acquit the offender of all the penalties annexed to the conviction, and to give him needed credit and capacity. (*People* v. *Pease*, 3 Johns. Cases, 333; *Wood* v. *Fitzgerald*, 3 Oregon, 568; *In re Deming*, 10 Johns. 232; *State* v. *Baptiste*, 26 La. An. (Rehearing) 136; *Ex parte Hunt*, 5 Eng. (Ark.) 284; 1 Greenl. on Ev., sec. 377.)

IV. A pardon restores the competency of a person who has been restored, whether he has been restored to citizenship or not. (*Yarborough* v. *The State*, 41 Ala. 405.)

V. The question of the validity of this pardon, for reasons not appearing upon the face of the pardon, can not be raised by the defendants in this action. (*Hester* v. *The Commonwealth*, 85 Pa. St. 154.)

By the Court, BEATTY, C. J.:

At the trial of this case in the district court, the state called, among other witnesses, one Charles F. Roper. The

defendants objected to the competency of this witness on the ground that he was a convicted felon, and to support their objection, offered, together with his own admissions, duly authenticated records of the courts of California, from which it appeared that he had been convicted in that state of two distinct offenses—grand larceny in Butte county, in 1873, and burglary in the second degree in Alameda county, in 1877, and thereupon sentenced to imprisonment in the State Prison.   No objection was made to this evidence; and it seems to have been conceded at the trial, as it has been in the argument here, that it was sufficient to disqualify the witness unless his competency was restored by a pardon, of which the following is a copy:

"State of California, Executive Department: Whereas, at the April term, A. D. 1877, of the county court, held in and for the county of Alameda, in said state, Charles Anderson" (which Roper admitted to have been his then *alias*) "was tried and convicted of the crime of burglary, second degree, and sentenced to undergo an imprisonment in the state prison for the term of two years;·

"And, whereas, the said Charles Anderson was discharged from the prison on the fifth day of January, A. D. 1879, without being pardoned;

"And, whereas, the testimony of the said Charles Anderson is represented to be necessary to the ends of justice in cases now pending in the courts of justice of the State of Nevada;

"And, whereas, an unpardoned felon is not permitted by the laws of said state to testify in the courts of justice thereof;

"Now, therefore, by virtue of the authority in me vested by the constitution and laws of this state, I, William Irwin, Governor of the State of California, do hereby pardon the said Charles Anderson, and order that he be restored to citizenship.   Witness my hand and the great seal, etc."

To the admission of this paper counsel for defendants objected upon various grounds to be more particularly noticed hereafter.   But the court overruled the objections; and be-

ing of the opinion, as we infer, that the pardon was sufficient to restore the competency of the witness, permitted him to testify to material facts against the defendants, who were thereupon convicted of the crime of burglary, and sentenced to the state prison.

Having appealed from the judgment, they assign, as error, the ruling of the district judge in favor of the competency of the witness Roper.

Assuming for the present, as has been done throughout the argument, that a person convicted of an infamous offense in the courts of another state is thereby rendered incompetent to testify as a witness in a criminal proceeding in this state, we are satisfied that the district judge erred, not in overruling the objections to the admission in evidence of the pardon above granted, but in holding that its effect was to remove the consequence, not only of the conviction and judgment which it recites, but also the effects of another and distinct conviction and sentence to which it makes no sort of reference.

The specific objections to the admission of the pardon in evidence were, in substance:

1. That a pardon has no effect beyond relieving its object from the punishment expressly imposed by the sentence of the court, and consequently that it does not restore his competency as a witness.

2. That said supposed pardon was void, because it did not appear from any of its recitals that the notice of intention to apply for it, required by the laws of California, had been given.

3. That it was void because it appeared to have been granted after the expiration of the convict's term of imprisonment.

These objections were properly overruled.

As to the first, the authorities are uniform to the effect that a full and unconditional pardon of an offense removes all disabilities resulting from conviction thereof. The cases cited by appellants in support of this objection, so far as they are in point, are against them.

In *State* v. *Richardson,* 18 Ala. 109, it was held that a

person condemned to fine and imprisonment, and released by the pardoning power from the imprisonment, is not thereby discharged of the fine. In other words, it was held in that case that, by the express terms of the pardon in question, it was the intention of the executive to remit a part only of the penalties that had been imposed.

In *Perkins* v. *Stevens*, 24 Pick. 277, the same thing was decided. The court say, p. 278: "The conviction of the witness rendered him incompetent. *A general pardon would unquestionably restore his competency.*" But they show that the pardon relied on was not, and was not intended to be, a general pardon. The form adopted by the executive of Massachusetts in pardoning an offense was: "We grant unto him, the said A. B., a full pardon of his said offense, and restore him to the rights and privileges which he forfeited by the conviction aforesaid," but in the case then before the court the executive had merely, during the execution of the sentence upon the witness, remitted to him "*the residue of the punishment he was sentenced to endure.*" The question in that case indeed was not the intention of the Executive, but rather as to his authority to limit the effect of the pardon, and this was the point principally discussed, the conclusion of the court being, that the power to pardon " necessarily includes the lesser power of remission and commutation. If the whole offense may be pardoned, *a fortiori*, a part of the punishment may be remitted, or the sentence commuted. If an absolute pardon may be granted, of course a conditional one may be."

In *People* v. *Bowen*, 43 Cal. 439, and *Blanc* v. *Rogers*, 49 Id. 15, a similar question was involved and similar views were expressed. In the first case (p. 442) the court say: "The governor might have pardoned Davis had he seen fit— he was not the less the subject of the executive power in that respect because he had already suffered the punishment adjudged for his crime. (2 Wheeler C. C. 451). *Had he done so there is no doubt that his competency as a witness would have been thereby restored.*" But they held that he had not done so—that he had neither pardoned nor intended to pardon

the witness, but had attempted the impossible feat of restoring his competency without pardoning the offense.

From this review of the cases cited by appellants, it will be seen that they are in perfect harmony with all the authorities as to the proposition that the effect of a full pardon "is to make the offender a new man; to acquit him of all corporal penalties and forfeitures annexed to the offense for which he obtains his pardon, and not so much to restore his former, as to give him a new *credit and capacity*." (4 Black. Com. 402; see, also, 1 Greenl. Ev., sec. 377; *People* v. *Pease*, 3 Johns. Cas. 333; *Wood* v. *Fitzgerald*, 3 Or. 568; *In re Deming*, 10 Johns. 232; *State* v. *Baptiste*, 26 La. An. 136; *Ex parte Hunt*, 5 Eng. (Ark.) 284; *Hester* v. *Commonwealth*, 85 Pa. St. 154; 2 Hawk. P. C. 547, and cases there cited; 1 Phill. Ev. 21; 1 Gilb. Ev. 259.)

As to the second point. No notice of intention to apply for a pardon is required by the law of California. "When the term of imprisonment of the applicant is within ten days of its expiration" (2 Hitt. Codes, sec. 14,423); and *a fortiori*, we should say, no notice would be required when the term of imprisonment was completed. If so, there was no necessity that the pardon should recite the fact of notice given and proved, or that it should be established by proof *aliunde*.

As to the third ground of objection: It is well settled that a pardon may be granted after the convict has suffered the entire punishment to which he has been condemned, and that the effect, in such case, is to restore his competency as a witness. (See *People* v. *Bowen, supra;* 2 Wheel. Crim. Cas. 459; *State* v. *Blaisdel*, 33 N. H. 388; 1 Greenl. Ev., sec. 377.)

And there is good reason why this should be so. There have undoubtedly been cases—at least it is easy to suppose a case—in which the convict has been proved innocent after the completion of the punishment prescribed by his sentence. It would be a reproach to the law to suppose that under such circumstances nothing short of an act of the legislature (if even that would be available under our constitution or the constitution of California) could restore him

to his unjustly forfeited privileges. And if the power to pardon after the completion of the punishment ought to exist and does exist, it is certain that there is no limit to its exercise except the discretion of the person in whom the unrestricted power is vested. The only restrictions upon the power of the Governor of California to grant pardons are, that it does not extend to the crime of treason or to cases of impeachment, and that it can only be exercised after conviction, and subject to such regulations as may be prescribed by law *relative to the manner of applying for pardons.* (Const., Art. V., sec. 13.) Hence it follows that not only under the California decisions, but under all the decisions, the power to grant the pardon under consideration is unquestionable.

It was therefore properly admitted in evidence, because it supplied part of the proof necessary to restore the competency of the witness.

But it was not, by itself, sufficient for that purpose. The witness had been convicted of two distinct felonies, and as long as either judgment remained unreversed and the offense unpardoned, he was incompetent to testify.

Now, this pardon, notwithstanding its manifest object was to make Roper a competent witness in the courts of this state, can not be held to apply to any offense except the one which it recites. Under the California decisions, above referred to (*People* v. *Bowen,* and *Blanc* v. *Rogers*), the "order that be restored to citizenship" must be disregarded. If Roper was pardoned, those words were superfluous; if he was not pardoned, they were nugatory. The effect of the pardon must therefore be determined by reference to the preceding clause—" do hereby pardon the said Charles Anderson "—considered in connection with the preamble by which it is introduced. So considered, it must be held under the settled rule of construction applying to acts of this kind, that the Governor of California intended to pardon the offense recited, and no other, and that, so far as the pardon may, in general terms, comprehend offenses not specified, it is void.

This was the common law rule applied to pardons granted

by the kings of England whose power in this respect was certainly more ample than that of the Governor of California. They could grant pardons before as well as after conviction, and before as well as after indictment.    But although it was never asserted in terms that they had no power to pardon a man of all felonies in general without describing any one particular felony, the rule of constructing pardons had the practical effect of denying the existence of any such power.    For whenever it could be reasonably intended that the king, when he granted a pardon, was not fully apprised both of the heinousness of the crime, and also how far the party stood convicted thereof upon record, the pardon was held void, as being gained by imposition upon the king. "And upon this ground it hath been holden that if one be indicted by these words: ' that he had slain a man for having sued him in the king's court,' and the king make him a charter of all manner of felonies; this charter shall not be allowed because it shall be intended that the king was not acquainted with the heinousness of the crime, but deceived in his grant."   (2 Hawkins' Pl. Crown, c. 37, sec. 8, p. 533.)

On the same principle it was held that a pardon of a particular offense after attainder, or conviction by verdict, was void unless it recited the attainder or the indictment and conviction.    (Id. 534.)

"Also it hath been questioned whether the pardon of one who is barely indicted of felony be good, if it do not mention the indictment.    But this hath been adjudged to be helped by the words *'sine indicatus sine non.'"*    (Id. 534.)

The same author (pp. 534–5) denies the efficacy in his time (1716) of a general pardon " of all felonies " as a plea in bar to an indictment found after the granting of such pardon.    But however this may be, it seems to be clear from the numerous cases and precedents cited by him, that a pardon was of no avail after conviction unless it recited the indictment and conviction.    And if this was the common law rule it is still the rule, for it has not been changed by the legislature, and the reasons upon which it stands are as strong now as they ever were.    There is as strong a presumption to-day as there ever was, that although the

executive might think a man worthy of being restored to civil rights who had committed one offense against the law, he would not think so if he knew that he was an habitual offender. (See further upon this point, 4 Black Com. 400; *State* v. *Leak*, 5 Ind. 359; 1 Chitty Cr. Law, 770; *State* v. *McIntire*, 1 Jones Law (N. C.), 1.)

If it be claimed that the pardon of a later offense necessarily carries with it the pardon of earlier offenses of the same character, the contrary has been held in *Hawkins* v. *State*, 1 Porter (Ala.), 475, and in *State* v. *M'Carty*, 1 Bay (S. C.), 334.

It follows that Roper was never pardoned of the offense of grand larceny for which he was sent to the California state prison from Butte county, in 1873, and if that judgment had the effect of rendering him incompetent to testify in our courts, the appellants must be granted a new trial.

But does a conviction in one state disqualify the convict from testifying in another state ? It was conceded in the argument, and we have thus far assumed, that it does. The question, however, is vital to the case, and we should not feel justified in deciding it in the affirmative, merely because counsel has admitted that it must be so decided. Mr. Greenleaf (1 Ev., sec. 376) declares that the weight of modern opinion is the other way, and Mr. Bishop (1 Crim. Law, sec. 976) takes the same view. There is but one case, however, which supports this declaration (*Commonwealth* v. *Green*, 17 Mass. 539), while there are at least two well reasoned and more recent decisions directly to the contrary. The first of these (*State* v. *Chandler*, 3 Hawks, 393) was decided very shortly after the Massachusetts case, and apparently without any knowledge of the grounds of that decision; but in the other case (*Chase* v. *Blodgett*, 10 N. H. 22) the grounds of the decision in *Commonwealth* v. *Green* are thoroughly reviewed, and the argument, in our opinion, completely overthrown. There is a reference in the digest to a case in 42 N. Y. Superior Court Reports, where the point seems to have been held as it was in Massachusetts. We have been unable to procure that volume, but we presume it adds nothing to the reasoning of the court in *Com-*

*monwealth* v. *Green.* This case we have given a very attentive consideration without being at all convinced by it. The court adduces a number of reasons in support of its conclusions, but rests upon no one of them as a conclusive ground of decision.

The argument to which most weight seems to be attached is, that a state will not enforce the penalty of a crime committed beyond its jurisdiction, and the denial to a convict of the right to testify, they say, is a part of his punishment. This argument is very satisfactorily met and entirely refuted in both the North Carolina and New Hampshire cases above referred to. They say, in effect, that the ground upon which a convict is held incompetent to testify is, that there is no presumption that he will speak the truth; he is excluded, not for the purpose of punishing him, but for the protection of the party against whom he offers to testify; if it thereby results incidentally that he is subjected to humiliation and disgrace, this is an inconvenience which it is entirely within the power of the state to impose, and of which he has no more right to complain, than an atheist had to complain of the discredit which the laws of many countries formerly attached to his oath. Without further comment on these cases, we content ourselves with saying that, in our opinion, the weight of authority and the soundest reasons support the doctrine that a person convicted of an infamous crime in another state is thereby rendered incompetent to testify in our courts.

It may be that the tendency of enlightened opinion and of recent legislation in other states and countries is against the rule which absolutely excludes the testimony of a convict; it may be that it is an unwise and impolitic rule, but it is unquestionably the law of this state. Not only is the common law unaltered by statute in this particular, but in civil practice it is expressly reaffirmed. (Comp. L. 1441.) This shows that the legislature approves the policy of the common law rule, and we can not hold that it is less essential in criminal than in civil cases; we feel bound, on the contrary, to maintain it as strictly in one class of cases as in the other.

The common law rule, in substance is, that when it has been shown by evidence which imports verity, that a man has been adjudged guilty of an infamous crime he is no longer worthy of belief, and no man's life or liberty or property is to be affected by his oath. In England, the country from which we have received the common law, it is true that a foreign conviction did not disqualify a person from testifying, but the reason of this was, that the record of his conviction was not conclusive evidence of the fact in an English court. Under the constitution and laws of the United States, however, the public acts and records of each state, when properly authenticated, are entitled to full faith and credit in the courts of every other state. The appellants, therefore, proved conclusively that Roper had been sentenced to the state prison of California for a crime (grand larceny) which, at common law and under our statute, was, and is a felony, and the presumption is, in the absence of all proof, that grand larceny means in California what it meant at common law and what it means under our statute. If the laws of California include under the name of grand larceny, offenses which, under our law, are not deemed infamous, the fact is susceptible of proof, but, until such proof is offered, the presumption is to the contrary, and Roper must be held upon the case before us to have been proved incompetent to testify.

The judgment of the district court is therefore reversed, and the cause remanded for a new trial.