THE PEOPLE OF THE STATE OF NEW YORK ex rel. MARTIN PRISAMENT, Respondent, against JOSEPH H. BROPHY, as Warden of Auburn State Prison, Appellant.

Argued October 16, 1941; decided November 27, 1941.

*John J. Bennett, Jr., Attorney-General (Henry Epstein, Edward T. Boyle* and *Patrick H. Clune* of counsel), for appellant. The pardon granted by the President of the United States on the ground of innocence did not alter the status of the respondent as a second offender under section 1941 of the Penal Law. (*People* v. *Price,* 119 N. Y. 650; *Roberts* v. *State,* 160 N. Y. 217; *People* v. *Carlesi,* 154 App. Div. 481; 208 N. Y. 547; 233 U. S. 51; *People ex rel. Geiselman* v. *Hunt,* 275 N. Y. 612; *People* v. *Fabian,* 192 N. Y. 443; *Shepherd* v. *People,* 25 N. Y. 406; *Matter of Garland,* 4 Wall. 380; *Matter of Spenser,* 22 Fed. Cas. 921; *People ex rel. Jobissy* v. *Murphy,* 244 App. Div. 834; 268 N. Y. 695.) The executive authorities cannot perform judicial functions. (*People ex rel. McDonald* v. *Keeler,* 99 N. Y. 463; *People* v. *Supervisors,* 16 N. Y. 424; *Roberts* v. *State,* 30 App. Div. 106; 160 N. Y. 217; *Knote* v. *United States,* 95 U. S. 149; *Matter of Davies,* 168 N. Y. 89.)

*Thomas E. Dewey, District Attorney, New York County (Stanley H. Fuld* of counsel), *amicus curiæ.* The relator was properly sentenced as a second felony offender since the pardon did not obliterate the record of his previous conviction. (*Roberts* v. *State,* 160 N. Y. 217; *Burdick* v. *United States,* 236 U. S. 79; *People ex rel. Patrick* v. *Frost,* 133 App. Div. 179; *People* v. *Van Zile,* 80 Misc. Rep. 329; Williston, " Does a Pardon Blot Out Guilt," 28 Harv. Law Rev. 647; *People ex rel. Jobissy* v. *Murphy,* 244 App. Div. 834; 268 N. Y. 695; *People ex rel. Malstrom* v. *Kaiser,* 135 Misc. Rep. 67; 228 App. Div. 743; *People* v. *Carlesi,* 154

App. Div. 481; 208 N. Y. 547; 233 U. S. 51; *People* v. *Price,* 53 Hun, 185; 119 N. Y. 650; *People* v. *Van Zile,* 80 Misc. Rep. 329; *People* v. *McTigue,* 99 Misc. Rep. 17; *People ex rel. Geiselman* v. *Hunt,* 275 N. Y. 612; *People* v. *Isaacs,* 258 App. Div. 871.)

*Martin Prisament,* in person, respondent. The order of the Appellate Division should be affirmed. (*Carlesi* v. *People,* 208 N. Y. 547; 233 U. S. 51; *Caujolle* v. *Ferrie,* 23 N. Y. 90; *Tracy* v. *Frey,* 95 App. Div. 579; *Pope* v. *Heckscher,* 266 N. Y. 114; *Mills Orchard Corp.* v. *Frank,* 137 Misc. Rep. 407; *Ferguson* v. *Crawford,* 70 N. Y. 253.)

LEHMAN, Ch. J. The relator on March 11, 1940, was convicted, in the Court of General Sessions of the County of New York, upon his plea of guilty of attempted robbery in the third degree. The District Attorney of the county filed an information, pursuant to section 1943 of the Penal Law, accusing the relator of having been convicted on June 14, 1937, in the United States District Court for the Middle District of Georgia, of robbing a member bank of Federal Deposit Insurance Corporation. The relator, after being duly cautioned as to his rights, acknowledged that " he is the same person mentioned in the several records set forth in said information." He was thereupon sentenced as a second offender, in accordance with the provisions of section 1941 of the Penal Law, to imprisonment in a State prison for the term of not less than five years nor more than ten years.

Though official records establish incontrovertibly that the relator was convicted in the United States District Court of a bank robbery, it appears also from official records that, two years after his conviction, he received a " full and unconditional pardon " from the President of the United States and that the pardon contains the preamble or recital: " Whereas it had been made to appear to me that the said Martin Prisament is innocent of the offense for which he is now being held." The relator, by writ of habeas corpus, has challenged the power of the court to impose upon him a sen-

tence as a second offender, since it appears that, after conviction of the first offense, he has received a complete and unconditional pardon upon a finding by the President that he is innocent of that offense. The Appellate Division has sustained that contention and has directed that the relator be remanded for resentence as a first offender. In granting leave to appeal to this court the Appellate Division has certified the question: " Was the relator legally sentenced as a second offender? "

A pardon has been defined as " an act of grace, proceeding from the power entrusted with the execution of the laws, which exempts the individual, on whom it is bestowed, from the punishment the law inflicts for a crime he has committed. It is the private, though official act of the executive magistrate, delivered to the individual for whose benefit it is intended." ( *United States* v. *Wilson*, 7 Pet. [U. S.] 150, 159.) Undoubtedly, in accordance with that definition, a pardon exempts a person who has received and accepted it from further punishment for the crime of which he has been convicted, regardless of whether or not executive pardon wiped out the judicial finding of guilt. Increased punishment decreed by the statute for any offender who commits a second error is not, however, further punishment for the prior offense. " The punishment is for the new crime only, but is the heavier if he is an habitual criminal." (*McDonald* v. *Massachusetts*, 180 U. S. 311, 312.) " The fact of the former conviction is an element merely in determining the criminality of the second offense. * * * The Legislature of this State has said that one who commits a crime, after having been convicted of another crime, is a greater offender than as though he had not previously been convicted, and the punishment inflicted is solely for the second offense to which a greater degree of criminality is thus attached." (*People* v. *Carlesi*, 154 App. Div. 481, 487, opinion by MILLER, J.; affd., 208 N. Y. 547; affd., 233 U. S. 51.) The court, which pronounces sentence for the second offense, may not re-examine the question whether the offender was in fact guilty of the crime of which he has previously been con-

victed; for under the statute the conviction conclusively establishes guilt. The court may not consider whether the increased punishment is in the particular case deserved by the offender or whether lesser punishment would in the circumstances be more appropriate; for the statute provides an inexorable rule. It follows that the decision of the Appellate Division can be sustained only if the President's pardon is more than " an act of grace " which exempts the offender " from the punishment the law inflicts for a crime he has committed," but is an official act which erases the judicial record of the offender's guilt.

In old judicial decisions and in scholarly commentaries, which, in the passing centuries, have acquired a measure of authority as legal classics, expressions may be found which seem to indicate that an executive pardon of a convicted felon is more than an act of grace which grants exemption from the punishment deserved for the crime, but in truth wipes out guilt and erases the judicial record of guilt. (See Professor Williston's article, " Does a Pardon Blot out Guilt? " 28 Harv. Law Rev. 647.) Courts in this country also have said at times that pardons have the effect of wiping out the guilt of a convicted felon. So the Supreme Court of the United States, which in *United States* v. *Wilson* (*supra*) defined an executive pardon as an executive act of grace exempting an individual from punishment for " a crime he has committed," has said later: " A pardon reaches both the punishment prescribed for the offence and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offence." (*Matter of Garland*, 4 Wall. [U. S.] 333, at p. 380.)

Literally, of course, an executive pardon cannot " blot out of existence the guilt " of one who committed a crime. At most it can wipe out the legal consequences which flow from an *adjudication* of guilt. In *Matter of Garland* (*supra*) the court gave to the presidential pardon no greater effect. The court decided only that " the effect of this pardon is **to**

relieve the petitioner from all penalties and disabilities attached to the offence of treason, committed by his participation in the Rebellion. So far as that offence is concerned, he is thus placed beyond the reach of punishment of any kind " (p. 381). To illuminate a decision in which a bare majority of the court concurred and which was rendered while the passions roused by the rebellion still clouded the judgment of most citizens, the court used, appropriately enough, a metaphor; but metaphors cannot appropriately be used to justify a conclusion which would follow logically only if the metaphor were not a figure of speech but an accurate description. The logical difficulties which must follow if the metaphor used by the court in *Matter of Garland* were accepted as a premise from which legal consequences inexorably follow are made manifest by what was said and decided by the court in *Matter of* ————, *an Attorney* (86 N. Y. 563, especially at p. 569).

The Supreme Court of the United States, indeed, has itself rejected the implications lurking in the metaphor it used in *Matter of Garland*. In *Burdick* v. *United States* (236 U. S. 79, 90) the court pointed out that, far from wiping out guilt, the acceptance of an executive pardon may imply a confession of guilt. " Escape by confession of guilt implied in the acceptance of a pardon may be rejected,— preferring to be the victim of the law rather than its acknowledged transgressor — preferring death even to such certain infamy." The President is empowered " to grant Reprieves and Pardons for Offences against the United States, except in Cases of Impeachment." (U. S. Const. art. II, § 2.) Neither Congress nor a State Legislature can limit the constitutional power of the President to exempt an offender from punishment for his offense (*Matter of Garland, supra*); but the state may still provide that in fixing the penalty for an offense against the sovereign state, the offender's past conduct, including the commission of an offense against another sovereign, may be taken into account even though the offender has been pardoned by such other sovereign. The Constitution, which confers upon the

President the power to pardon, does not confer upon him power to wipe out guilt. In measuring the punishment of a person who is convicted of an offense against this state, after he has been convicted of an offense against the United States, the state may determine as it sees fit both the effect that shall be given to the previous conviction and the effect that shall be given to a presidential pardon for that offense.

In some states in which, by statute, additional punishment · must be meted out to a person who is convicted of a felony after previous conviction of another crime, the courts have held that an executive pardon for the earlier offense exempts the offender not only from punishment for that offense but also from additional punishment for the second offense. (*State* v. *Lee*, 171 La. 744; *Scrivnor* v. *State*, 113 Tex. Cr. Rep. 194; *Edwards* v. *Commonwealth*, 78 Va. 39; *Kelley* v. *State*, 204 Ind. 612; *State* v. *Martin*, 59 Ohio St. 212.) In this state we have reached the opposite conclusion. We have held that an executive pardon does not obliterate the judicial finding of guilt of the offense which has been pardoned. Absolution, by temporal authority, for an offense implies, perhaps, that there is reason to believe that rigid enforcement of the usual penalty for the offense would work injustice. It ordinarily implies nothing more and where the offender sins again he is properly subject to additional punishment. (*People* v. *Carlesi*, *supra*; *People ex rel. Jobissy* v. *Murphy*, 244 App. Div. 834; affd., 268 N. Y. 695. See, also, *People* v. *Biggs*, 9 Cal. [2d] 508; *Mount* v. *Commonwealth*, 2 Duv. [Ky.] 93; *Herndon* v. *Commonwealth*, 105 Ky. 197; *State* v. *Edelstein*, 146 Wash. 221; *Commonwealth ex rel.* v. *Smith*, 324 Penn. St. 73; *State* v. *Webb*, 36 N. D. 235, 243; Williston, " Does a Pardon Blot Out Guilt? " 28 Harv. Law Rev. 647, 659; 1 Bishop on Criminal Law [9th ed. 1923], § 963; 2 Wharton on Criminal Procedure [10th ed.], § 1471.) It is said, however, that the rule is different where, as in this case, the pardon recites that it has been granted because the offender has established to the satisfaction of the executive that he is innocent of the offense of which he was convicted.

The conviction of an innocent man, even though he be a man of evil character and an associate of criminals, is a miscarriage of justice, and argument not without force is made that the state should not visit additional punishment upon him if after such wrongful conviction he commits a crime. The argument assumes that after an executive pardon has been granted because the convicted person has established his innocence *to the satisfaction of the executive*, the judgment of conviction which would otherwise be conclusive, no longer establishes guilt. We do not weigh the argument because we are constrained to reject its underlying assumption.

The judgment of guilt is, as matter of law, conclusive upon the executive as well as upon all others except where a statute provides otherwise. Nevertheless, a person convicted of crime may ask the chief executive to exercise his prerogative of mercy and certainly that plea is no less strong where the judicial finding of guilt is based on evidence which is far from conclusive and the convicted person is able to convince the executive that the judgment is erroneous. Then the executive has power to pardon because he is convinced that the conviction is unjust, though he has no power to set aside the judgment.

Under an ideal system of administration of justice a person convicted of a crime should, perhaps, be granted an opportunity to present to a court proof of his innocence whenever such proof becomes available and, then, to ask the court to vacate the erroneous judgment. In practice, inflexible rules of procedure may deny to a person wrongfully convicted any further access to the court. Then his only means of redress is appeal to the executive.

In the article by Professor Williston cited above he said: " The fact that a pardon may not infrequently be the only redress which is open to an innocent man operates not only as an injustice to the innocent, but, as has been said, probably exerts a retroactive influence towards the continuance of the notion that a pardon makes a convict into a man of good character " (p. 661). Perhaps the chief executive should have power to set aside a finding of guilt at least

where the courts are powerless. (See article by Professor Henry Weihofen, " The Effect of a Pardon," 88 U. of Pa. Law Rev. 177.) Perhaps, instead of conferring such power upon the executive the Legislature should confer upon the courts a larger power to revise judgments of conviction. Congress has seen fit to provide that, in an action which an innocent person may maintain for damages sustained by an erroneous conviction and imprisonment thereunder, a presidential pardon which contains a finding that the person convicted " did not commit any of the acts with which he was charged " shall have the same effect as a judicial finding, made on an appeal or upon a new trial or rehearing, that the convicted person is not guilty. (U. S. Code, tit. 18, §§ 729, 730.) It has not seen fit to provide that for any other purposes a presidential pardon shall have the same effect. It is interesting to note here that the English statute expressly provides that a pardon granted to a person who has been convicted does not affect the punishment to which the offender might be liable on a subsequent conviction for a felony. Only by judicial decree can the judgment of earlier conviction be set aside or denied all effect. (Criminal Law Act of 1827 [7 & 8 Geo. IV, ch. 28, § 13; Chitty's Statutes, 6th ed., vol. 3, p. 203]. See 4 Stephen, " Commentaries on the Laws of England " [18th ed. 1925], pp. 489, 490.)

We conclude that a presidential pardon, even if granted because the President is satisfied that the convicted person is innocent, is an act of grace which does not obliterate the finding of guilt. Any inflexible rule or standard of punishment prescribed by statute will inevitably work injustice in particular cases. The remedy in such cases lies with the executive of the state, not the court.

The order of the Appellate Division should be reversed and that of the Special Term of County Court dismissing the writ of habeas corpus affirmed. The question certified should be answered in the affirmative.

LOUGHRAN, FINCH, RIPPEY, LEWIS, CONWAY and DESMOND, JJ., concur.

Ordered accordingly.