206 P.3d 91 (2009)
In the matter of the Application of SANG MAN SHIN for an Order to Seal Records.
Sang Man Shin, Appellant,
v.
The State of Nevada, Department of Public Safety, Respondent.
No. 47995.
Supreme Court of Nevada.
March 26, 2009.
Amesbury & Schutt and John P. Parris and David C. Amesbury, Las Vegas, for Appellant.
Catherine Cortez Masto, Attorney General, and Robert G. Kilroy, Deputy Attorney General, Carson City, for Respondent.
BEFORE THE COURT EN BANC.[1]

OPINION
By the Court, SAITTA, J.:
We are asked to determine whether NRS 179.245(5), which prohibits Nevada courts from sealing records concerning sexually based offenses, improperly impinges upon the power of the State Board of Pardons Commissioners to issue pardons. While the pardoning power's reach is expansive, it does not extend to removing the historical fact that a conviction occurred, and it cannot bequeath innocence. Instead, a pardon is an act of forgiveness that restores civil rights and removes most legal consequences of a criminal conviction. We find nothing in Article 5, Section 14 of the Nevada Constitution that creates a civil right to expunge a criminal record. Only the Legislature can remove the historical fact of a criminal conviction by authorizing the expunction of the criminal record. Therefore, we conclude that the district court did not abuse its discretion when it set aside a prior order sealing a criminal record, and accordingly, we affirm.

FACTS AND PROCEDURAL HISTORY
The record indicates that in 1987, law enforcement officers arrested appellant Sang Man Shin for attempted lewdness with a minor, to which he subsequently pleaded guilty. The district court sentenced him to two years imprisonment and then suspended the sentence, imposing probation. Shin successfully served his probation.
*92 After maintaining a clean criminal record for approximately 15 years, Shin sought a pardon. Following his request, in 2002, the State Board of Pardons Commissioners (Pardons Board) granted him a pardon, restoring all of his civil rights except for the right to keep firearms. In 2006, Shin moved to have his criminal record sealed pursuant to NRS 179.245, to which the Clark County District Attorney stipulated. Thereafter, the district court granted the motion and ordered Shin's criminal record sealed.
Upon receiving notice of the district court's order, respondent State of Nevada, Department of Public Safety (DPS) moved to set it aside. During the district court proceedings, the DPS argued that Shin's record had been erroneously sealed because, as a convicted sex offender, NRS 179.245(5) expressly precluded the court from sealing his record since it "relat[ed] to a conviction of a crime against a child or a sexual offense." The district court agreed and ordered Shin's record unsealed.
Contending that his pardon not only restored his civil rights but entitled him to his record's expunction, Shin appealed.

DISCUSSION
On appeal, Shin principally contends that this court should follow the U.S. Supreme Court's decision in Ex parte Garland, which stated that a Presidential pardon blots out the existence of the offender's guilt, and thus removes all existence of a prior criminal conviction. 4 Wall. 333, 71 U.S. 333, 380, 18 L.Ed. 366 (1866). More specifically, Shin contends that his pardon not only cleared the civil rights restrictions attendant with his conviction, but further included the right to seal his criminal records. Pursuant to this reasoning, Shin asserts that NRS 179.245(5) is unconstitutional because the Legislature does not have the power to prevent him from sealing his criminal record. We disagree.

Standard of review
We review de novo a district court's legal conclusions, including matters of statutory constitutionality and statutory interpretation. Douglas Disposal, Inc. v. Wee Haul, LLC, 123 Nev. ___, ___, 170 P.3d 508, 512 (2007); Walker v. Dist. Ct., 120 Nev. 815, 819, 101 P.3d 787, 790 (2004). Statutes are presumptively valid, and "`the burden is on those attacking them to show their unconstitutionality.'" Sheriff v. Vlasak, 111 Nev. 59, 61-62, 888 P.2d 441, 443 (1995) (quoting Wilmeth v. State, 96 Nev. 403, 405, 610 P.2d 735, 737 (1980)).

Nevada's constitutional and statutory scheme governing pardons and record expunction
In Nevada, the Pardons Board's constitutional power to grant pardons and commutations of sentences is exclusive. Nev. Const. art. 5, § 14. The Nevada Constitution provides that "[t]he governor, justices of the supreme court, and attorney general, or a major part of them, of whom the governor shall be one, may ... grant pardons, after convictions." Id. Article 5, Section 14 of the Nevada Constitution specifically requires the Governor to be involved in the pardoning process as part of the executive function but is silent as to many of a pardon's effects, including the availability of record expunction. In furtherance of this constitutional provision, NRS 213.090 states that "[a] person who is granted a full, unconditional pardon by the Board is restored to all civil rights and is relieved of all disabilities incurred upon conviction." No other constitutional or statutory provision addresses the effects of a pardon.
The Nevada Constitution does not expressly address the expunction of criminal records. In the absence of a specific constitutional limitation to the contrary, the power to enact laws is vested in the Legislature. Nev. Const. art. 4, § 1; see Cramer v. Peavy, 116 Nev. 575, 582, 3 P.3d 665, 670 (2000). The Legislature has addressed the expunction of criminal records in NRS 179.245.[2] Although NRS 179.245 generally *93 grants the district court discretion to seal records of criminal conviction, it expressly prohibits the sealing of records pertaining to a sexual offense: "A person may not petition the court to seal records relating to a conviction of a crime against a child or a sexual offense." NRS 179.245(5). NRS 179.245(5) is silent regarding whether a pardon may nevertheless require sealing a sex offender's record. Resolving this question requires us to determine the scope of the pardoning powerparticularly, whether a pardon erases the offender's guilt and the historical fact of the crime, or merely relieves all conviction-imposed civil disabilities.
In addressing the scope of the pardoning power in Nevada, we begin by examining our precedent. Because our jurisprudence does not resolve the question of whether a pardon includes the attendant right to seal a criminal record, we consider the United States Supreme Court's precedent, caselaw from the United States Courts of Appeals, and finally, other states' jurisprudence.

Nevada decisional law
In an 1880 decision, State of Nevada v. Foley, this court considered the scope of the pardoning power. 15 Nev. 64 (1880). In Foley, the State sought to introduce a witness who was a convicted and pardoned felon. Id. at 66. The defense objected on competency grounds. Id. The district court overruled the objection and allowed the witness to testify, finding that the pardon restored the witness's competency. Id. at 66-67. On appeal, this court agreed, concluding that "the authorities are uniform to the effect that a full and unconditional pardon of an offense removes all disabilities resulting from conviction thereof." Id. at 67. In reaching this conclusion, this court relied on the similar authorities and language as utilized in Garland to explain that the purpose of a pardon was "to make the offender a new man; to acquit him of all corporal penalties and forfeitures annexed to the offense for which he obtains his pardon, and not so much to restore his former, as to give him a new credit and capacity." Id. at 69 (quoting William Blackstone, 4 Commentaries *402); see Ex parte Garland, 71 U.S. at 380-81. While this explanation suggested that the pardoning power's reach was expansive, this court ultimately reversed the district court and remanded for a new trial, concluding that the witness's competency had not been legally established, as he had been convicted of an additional crime that was not expressly addressed by the pardon. Foley, 15 Nev. at 67, 74.
Following Foley, this court later indirectly considered the scope of the pardoning power in Pinana v. State, 76 Nev. 274, 352 P.2d 824 (1960). In Pinana, the appellant was found guilty of first-degree murder and sentenced to life imprisonment without the possibility of parole. Id. at 278, 352 P.2d at 827. Asserting a variety of errors on appeal, the appellant contended that the sentence was unconstitutional in part because it permitted the jury to abridge her eligibility for parole. Id. at 281, 352 P.2d at 828. More specifically, the appellant contended that Article 5, Section 14 of the Nevada Constitution, empowering the Pardons Board to grant pardons and commute punishments, precluded the Legislature from granting the judiciary the power to parole. Id. This court explained that a parole and a pardon are different legal concepts and are derived and governed by different provisions of law. Id. at 281-83, 352 P.2d at 828-29. Thereafter, this court concluded that the Executive's constitutional power to grant pardons was not unconstitutionally abridged by a statute providing for an administrative system of parole or by statutes granting the judiciary the power over paroles. Id. at 282, 352 P.2d at 829. While Pinana did not involve a factual predicate of a pardoned criminal, this court nevertheless distinguished parole from a pardon, explaining in dicta the legal effects of a pardon. Id. at 282-83, 352 P.2d at 829. Quoting the Supreme Court of Pennsylvania, we tacitly adopted its holding that:
"[a] pardon is the exercise of the sovereign's prerogative of mercy. It completely frees the offender from the control of the state. It not only exempts him from further punishment but relieves him from all the legal disabilities resulting from his conviction. *94 It blots out the very existence of his guilt, so that, in the eye of the law, he is thereafter as innocent as if he had never committed the offense."
Id. at 282, 352 P.2d at 829 (quoting Commonwealth v. Cain, 345 Pa. 581, 28 A.2d 897, 899 (1942)). Accordingly, we concluded that NRS 200.030 was not unconstitutional because the Legislature had the power to establish the appropriate punishment for a felony conviction, see Nev. Const. art. 4, § 1, and thus, acted within its powers when it delegated to the judiciary the power to eliminate the possibility of parole. Pinana at 283, 352 P.2d at 829.
These Nevada cases accord with early U.S. Supreme Court interpretations of the federal clemency power, which, as explained below, is no longer the prevailing view of the gubernatorial pardoning power in the majority of other courts around the nation.

United States Supreme Court decisions
The definition of a pardon, as first articulated by Chief Justice Marshall in United States v. Wilson, suggested that acceptance of a pardon might imply guilt. 32 U.S. 150, 7 Pet. 150, 8 L.Ed. 640 (1833). Justice Marshall stated that "[a] pardon is an act of grace," id. at 160, "the validity of which ... is not complete without acceptance." Id. at 161. Furthermore, Justice Marshall indicated that it might be rejected by the person to whom it was offered and that the court could not force it upon him. Id.
Ex parte Garland, an 1866 decision, represents the U.S. Supreme Court's articulation of the presidential pardoning power in several reconstruction era cases, holding that a pardon obliterates both the conviction and guilt and thus places the offender in the same position as if she had never committed the offense. 4 Wall. 333, 71 U.S. 333, 18 L.Ed. 366; see also Osborn v. United States, 91 U.S. 474, 477, 23 L.Ed. 388 (1875); Carlisle v. United States, 16 Wall. 147, 83 U.S. 147, 153, 21 L.Ed. 426 (1873). Following the Court's resolution of the dispositive issue in the case, the Court went on to explain that a pardon
reaches both the punishment prescribed for the offence and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offence. If granted before conviction, it prevents any of the penalties and disabilities consequent upon conviction from attaching; if granted after conviction, it removes the penalties and disabilities, and restores him to all his civil rights; it makes him, as it were, a new man, and gives him a new credit and capacity.
Garland, 71 U.S. at 380-81. After undertaking this expansive articulation of the pardoning power, the Court thereafter acknowledged that the power did have some limitations, as it could "not restore offices forfeited, or property or interests vested in others in consequence of the conviction and judgment." Id. at 381.
While the U.S. Supreme Court has never expressly overruled Garland, since that decision the Court has eroded its broad articulation of the power by narrowing its scope in Angle v. Chicago, St. Paul, Minneapolis & Omaha Railway Co., 151 U.S. 1, 14 S.Ct. 240, 38 L.Ed. 55 (1894), Burdick v. United States, 236 U.S. 79, 35 S.Ct. 267, 59 L.Ed. 476 (1915), and Carlesi v. New York, 233 U.S. 51, 34 S.Ct. 576, 58 L.Ed. 843 (1914). In Angle, the Court held that a third-party civil right of action to recover damages remains regardless of a pardon. Angle, 151 U.S. at 19, 14 S.Ct. 240. In Burdick, the Court implicitly acknowledged that the mere act of accepting a preconviction pardon carried an unremovable social stigma, an acknowledgement that is inconsistent with a position that a pardon blots out all existence of guilt. 236 U.S. at 90-91, 35 S.Ct. 267 (reversing a defendant's contempt conviction for the refusal to testify before a grand jury even after receiving a presidential pardon and explaining that "the grace of a pardon, though good its intention, may be only in pretense or seeming, ... involving consequences of even greater disgrace than those from which it purports to relieve"). In Carlesi, the Court held that a sentencing board may consider the pardoned offender's prior actions when determining the punishment for a new offense. 233 U.S. at 59, 34 S.Ct. 576. This holding impliedly *95 indicates that the offender's pardon did not completely erase all the attendant consequences and considerations following the fact of conviction. See id.
The Supreme Court later backed away from the theory of a pardon as an admission of guilt or that a pardon could be rejected by the recipient in Biddle v. Perovich,[3] 274 U.S. 480, 47 S.Ct. 664, 71 L.Ed. 1161 (1927). Biddle involved a certified question from a circuit appellate court regarding whether the President had the authority to commute a sentence from the death penalty to life in prison. Justice Holmes, writing for the Supreme Court, answered in the affirmative, holding that it was "the public welfare, not his consent, [that] determines what shall be done" and that Biddle could not refuse the pardon. Id. at 486, 47 S.Ct. 664. The Court emphasized the broad plenary power conferred to the President by Article II, Section 2, Clause 2 of the United States Constitution to allow the forgiveness of a convicted person, in part or entirely, or to reduce or alter the penalty. Signaling a clear departure from Justice Marshall's prior characterization of a pardon, Justice Holmes intimated that a pardon does not blot out all guilt associated with a conviction, stating that:
[a] pardon in our days is not a private act of grace from an individual happening to possess power. It is a part of the Constitutional scheme. When granted it is the determination of the ultimate authority that the public welfare will be better served by inflicting less than what the judgment fixed.
Id. at 486, 47 S.Ct. 664; see Cook v. Freeholders of Middlesex, 26 N.J.L. 326, 333 (N.J.1857) ("The power of pardoning is founded on considerations of the public good, and is to be exercised on [that] ground.").

United States Courts of Appeals decisions
The United States Courts of Appeals for the Third Circuit, Seventh Circuit, and the District of Columbia Circuit have not followed Garland's broad articulation of the presidential pardoning power. U.S. v. Noonan, 906 F.2d 952, 958, 960 (3d Cir.1990) (concluding that a pardon can only remove the punishment for a crime, not the fact of the crime itself, and holding that the United States Supreme Court's decision in Burdick implicitly rejected its prior sweeping conception of the pardoning power in Garland); Bjerkan v. United States, 529 F.2d 125, 128 n. 2 (7th Cir.1975); In re North, 62 F.3d 1434, 1437 (D.C.Cir.1994) (concluding that the United States Supreme Court's articulation of the pardoning power in Garland was uncontrolling dictum and further holding that the Burdick decision implicitly rejected the overly broad position). Rather, they have concluded that the explanation was mere dictum because the Court had already decided the dispositive issue of whether a particular oath was constitutional and was also implicitly overruled by Burdick.
Focusing on the scope of the Texas executive's pardoning power, in Groseclose v. Plummer, the Ninth Circuit Court of Appeals reached a similar conclusion. 106 F.2d 311 (9th Cir.1939). In Groseclose, the Ninth Circuit rejected the defendant's contention that the Texas pardons wiped out his prior convictions as though they had never occurred, analogizing that "[t]his is the same as saying that executive clemency clears the boards as thoroughly as the granting of a new trial and subsequent acquittal would do." Id. at 313. While recognizing that some authorities supported the proposition that a pardon obliterated the underlying conviction and guilt, the Ninth Circuit disagreed, concluding that
the great weight of authority support[s] the more realistic view that a pardon, to the extent of its terms, does nothing more than to abolish all restrictions upon the liberty of the pardoned one, and upon his civil rights that follow a felony conviction and sentence.
Id. The court acknowledged that while a Texas pardon may have the effect of prohibiting the Texas courts from considering the act giving rise to the pardoned offense, the pardon could "not turn back the hand of time[;] ... the stubborn fact remains that the habit of crime was upon him." Id.

*96 Other courts' authority

Lower courts have similarly taken the position that a pardon's power does not include the ability to abrogate a conviction's underlying guilt and have concluded that Garland's interpretation of the power was mere dictum. For instance, the New York Court of Appeals, in People v. Brophy, held that a pardon could wipe out the legal consequences flowing from an adjudication of guilt, but concluded that Garland's "blotting out" language was merely used as a "metaphor" to encourage support for a contentious decision in a tumultuous time in our nation's history, when "passions roused by the rebellion still clouded the judgment of most citizens." 287 N.Y. 132, 38 N.E.2d 468, 470 (1941). In the case of In re Abrams, the District of Columbia Court of Appeals agreed that the pardon discussion in Garland was dictum and concluded that a pardon did not "blot out of existence the guilt" associated with one who committed a crime. 689 A.2d 6, 18-19 (D.C. 1997) (citing Brophy, 38 N.E.2d at 470). To illustrate the implications of concluding that a pardon blots out the existence of guilt, the District of Columbia Court of Appeals offered the following analogy:
Suppose that an alcoholic surgeon performs an operation while intoxicated. He botches the surgery. The patient dies. The surgeon is convicted of manslaughter and is sentenced to imprisonment. The President grants him a full and unconditional pardon. According to Abrams, the surgeon now has the right, as a result of the pardon, to continue to operate on other patients, without any interference from the medical licensing authorities.
Id. at 10-11. The District of Columbia Court of Appeals concluded that this result would be "altogether unacceptable and even irrational." Id. at 11. Although the pardon did away with the consequences of the conviction, "it could not and did not require the court to close its eyes to the fact that Abrams did what he did." Id. at 7.
In Dixon v. McMullen, the United States District Court for the Northern District of Texas addressed whether a police academy applicant who had initially pleaded guilty to a case that was subsequently dismissed, and then received a gubernatorial pardon, could be eligible to serve as a police officer. 527 F.Supp. 711 (N.D.Tex.1981). Because the pardon was not issued on the basis of proof of innocence, the underlying guilt of the offense remained regardless of the pardon. Id. at 718. The Dixon court recognized that separation of powers was an issue and stated that
[t]he undisputed legal effect of a pardon is to restore the civil rights to an ex-felon (suffrage, jury service, and the chance to seek public office). However, the Governor cannot overrule the judgment of a court of law. He has no "appellate" jurisdiction.... Regardless of the post-judgment procedural maneuvering, a final conviction does not disappear. A pardon implies guilt. Texas Courts may forgive, but they do not forget. The fact is not obliterated and there is no "wash." ... Moreover, the granting of a pardon does not in any way indicate a defect in the process. It may remove some disabilities, but does not change the common-law principle that a conviction of an infamous offense is evidence of bad character.
Id. at 717-18 (internal citations omitted).
Florida imposes conditions on the eligibility of an individual seeking to expunge or seal her criminal record. The Supreme Court of Florida, in R.J.L. v. State, 887 So.2d 1268, 1270 (Fla.2004), concluded that the issuance of a pardon did not remove the historical fact that the individual was convicted. Id. at 1281. Additionally, the court reaffirmed that statutory requirements governing record expunction were not a violation of the separation of powers doctrine, in part because the court's authority was derived from a statutory grant of power. Id. at 1271 (citing with approval State v. D.H.W., 686 So.2d 1331, 1335 (Fla.1996)). Therefore, the court held that the legislature could require certain conditions be met before granting a petition for record expunction. Id.
Having examined several cases and numerous other legal authorities, the R.J.L. court concluded that the effect of a pardon generally fell into two categories. Id. at 1278. In the first category, three courts had expressly adopted the reasoning of Garland and concluded *97 that a pardon "remov[ed] an adjudication of guilt so that the person is treated as if he never committed the crime" and, therefore, a pardon would carry with it the attendant right of records expunction. Id. at 1278-79 (citing State v. Bergman, 558 N.E.2d 1111, 1114 (Ind.Ct.App.1990); State v. Cope, 111 Ohio App.3d 309, 676 N.E.2d 141, 143 (1996); Com. v. C.S., 517 Pa. 89, 534 A.2d 1053, 1054 (1987)). The second category of decisions involved cases which had held that although a pardon may remove punishment or restore civil rights, it did not remove the adjudication of guilt. Id. (citing People v. Thon, 319 Ill.App.3d 855, 254 Ill.Dec. 177, 746 N.E.2d 1225 (2001); Storcella v. State. Dept. of Treasury, 296 N.J.Super. 238, 686 A.2d 789, 792 (Ct.App.Div.1997); People v. Brophy, 287 N.Y. 132, 38 N.E.2d 468 (1941); Prichard v. Battle, 178 Va. 455, 17 S.E.2d 393, 397 (1941)). The R.J.L. court determined that only nine jurisdictions had directly addressed the issue of whether a pardon entitles an individual to record expunction and that a majority of those courts agreed, based principally on the reasoning that "a pardon does not `blot out the existence of guilt,'" id. at 1279 (quoting State v. Skinner, 632 A.2d 82, 87 (Del.1993)), that "a pardoned individual is not entitled to record expunction." Id. (citing Skinner, 632 A.2d at 87; People v. Glisson, 69 Ill.2d 502, 14 Ill.Dec. 473, 372 N.E.2d 669, 671 (1978); Com. v. Vickey, 381 Mass. 762, 412 N.E.2d 877, 883 (1980); State v. Bachman, 675 S.W.2d 41, 52 (Mo.Ct.App. 1984); State v. Blanchard, 100 S.W.3d 226, 228 (Tenn.Crim.App.2002); State v. Aguirre, 73 Wash.App. 682, 871 P.2d 616, 620 (1994)).
After considering the split of authorities that had confronted the issue, the Florida Supreme Court initially determined that, while a pardon removes punishment and disability and restores civil rights, expunction is not a civil right. R.J.L., 887 So.2d at 1280. The Florida Supreme Court then reasoned that a pardon's power to forgive the legal consequences of a criminal act did not confer innocence or remove the historical fact that the crime occurred. Id.

The pardon did not include expunction in this case
Based upon the reasoning expressed in Angle v. Chicago, St. Paul, Minneapolis & Omaha Railway Co., United States v. Wilson, Burdick v. United States, and Carlesi v. New York, we conclude that the U.S. Supreme Court has sub silentio retreated from Garland's sweeping articulation of the pardoning power. 151 U.S. 1, 19, 14 S.Ct. 240, 38 L.Ed. 55 (1894); 32 U.S. 150, 159-61, 7 Pet. 150, 8 L.Ed. 640 (1833); 236 U.S. 79, 90-91, 35 S.Ct. 267, 59 L.Ed. 476 (1915); 233 U.S. 51, 59, 34 S.Ct. 576, 58 L.Ed. 843 (1914). The United States Court of Appeals for the Seventh Circuit in Bjerkan v. United States, 529 F.2d 125, 128 n. 2 (7th Cir.1975), the Third Circuit in U.S. v. Noonan, 906 F.2d 952, 958, 960 (3d Cir.1990), the District of Columbia Circuit in In re North, 62 F.3d 1434, 1437 (D.C.Cir.1994), and the Ninth Circuit in Groseclose v. Plummer, 106 F.2d 311, 313 (9th Cir.1939), as well as the United States District Court for the Northern District of Texas in Dixon v. McMullen, 527 F.Supp. 711, 718 (N.D.Tex.1981), have all reached a similar conclusion and held that Garland's recitation of the power was noncontrolling dictum. The majority of the state courts that have addressed the issue, including the New York Court of Appeals in People v. Brophy, 287 N.Y. 132, 38 N.E.2d 468, 470 (1941), the District of Columbia Court of Appeals in In re Abrams, 689 A.2d 6, 19 (D.C.1997), and the Supreme Court of Florida in R.J.L. v. State, 887 So.2d 1268, 1270 (Fla.2004), have all concluded that the pardoning power does not bequeath innocence or erase the historical fact of the underlying criminal act and conviction.
We adopt the reasoning of these cases limiting the scope of a pardon because the rationale is consistent with Nevada's Constitution. As we have observed, there is nothing in Nevada's Constitution that creates a civil right to expunge a criminal record. The authorities cited are in accord: expunction is not a civil right. Based upon these well-reasoned authorities, we hereby retreat from our prior decisions in State of Nevada v. Foley, 15 Nev. 64, 69 (1880), and Pinana v. State, 76 Nev. 274, 282, 352 P.2d 824, 829 (1960), to the extent that they imply that a pardon blots out guilt and erases the historical fact of the underlying conviction. In *98 doing so, we acknowledge that Pinana's quotation of the Supreme Court of Pennsylvania, which concluded that a pardon "blots out the very existence of his guilt," was merely dictum because Pinana did not involve a pardoned criminal. Id. (citing Commonwealth v. Cain, 345 Pa. 581, 28 A.2d 897, 899 (1942)).
Because we conclude that the effect of the pardon does not erase the historical fact of the conviction, we hold that there is nothing in the Nevada Constitution that creates a civil right to an expunction of the record of a criminal conviction. Additionally, we hold that the Legislature's enactment of NRS 213.090, addressing those circumstances in which the historical fact of a criminal conviction may be expunged from public view, does not abridge the pardoning power in Article 5, Section 14 of the Nevada Constitution.

CONCLUSION
As NRS 179.245(5) regulates the expunction of a criminal record of convicted sex offenders, and as expunction is not a civil right contemplated within the scope of the constitutional pardoning power, we conclude that NRS 179.245(5) does not improperly impinge on the Pardons Board's power. Accordingly, we hold that Shin is unable to demonstrate that the statute unconstitutionally abridges the Executive's pardoning power pursuant to Article 5, Section 14 of the Nevada Constitution. As a result, we conclude that the district court did not abuse its discretion when it unsealed Shin's criminal record, and accordingly, we affirm the court's decision.
We concur: HARDESTY, C.J., and PARRAGUIRRE, DOUGLAS, CHERRY and GIBBONS, JJ.
NOTES
[1] The Honorable Kristina Pickering, Justice, did not participate in the decision of this matter.
[2] NRS 179.245 explicitly delineates those crimes that constitute a sexual offense (including attempted lewdness with a child, of which Shin was convicted). Effective July 1, 2008, NRS 179.245 was amended to adjust where "crime against a child" is defined (NRS 179.245(7)(a)). See 2007 Nev. Stat., ch. 485, § 8, at 2751-53. The language relevant to our analysis in this opinion was not altered.
[3] In Biddle v. Perovich, the Court did not overrule Burdick, but rather stated "the reasoning ... is not to be extended to the present case." 274 U.S. at 488, 47 S.Ct. 664.